**Anthony LIBERATORE,**
**Petitioner–Appellant.**

v.

**Bill R. STORY, Warden,**
**Respondent–Appellee.**

**No. 87–5981.**

United States Court of Appeals,
Sixth Circuit.

Argued June 13, 1988.
Decided Aug. 5, 1988.

Mark K. DeVan (argued), Cleveland, Ohio, Elmer A. Giuliani, for petitioner-appellant.

Louis DeFalaise, U.S. Atty., Lexington, Ky., Robert E. Rawlins, Rockne Chickinell (argued), U.S. Parole Com'n, Office of Gen. Counsel, Chevy Chase, Md., for respondent-appellee.

Before MILBURN, GUY, and NORRIS, Circuit Judges.

RALPH B. GUY, Jr., Circuit Judge.

Petitioner, Anthony Liberatore, appeals from the district court's denial of his petition for a writ of habeas corpus. Petitioner is concurrently serving a five-year sentence for conspiracy, 18 U.S.C. § 371; a twelve-year sentence for bribery, 18 U.S.C. § 201(b)(3); and a fourteen-year sentence for conspiracy to violate the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d). In the instant case, petitioner does not contest the validity of his criminal convictions;[1] rather, he claims that the United States Parole Commission erred in determining his presumptive parole date. On appeal, petitioner asserts three arguments. First, he contends that the Parole Commission misapplied the parole guidelines. Second, he argues that the Regional Parole Commissioner improperly substituted her judgment for that of the parole panel which had recommended an earlier release date. Finally, petitioner claims that he should have been afforded a hearing in order to respond to letters sent by various law enforcement agents to the Regional Parole Commissioner urging the Commission not to release the petitioner.

We find that petitioner is not entitled to habeas relief under his first two theories. However, in light of newly discovered evidence which was not available to the district court, we find that the case must be remanded to the district court for the limited purpose of deciding whether the Parole Commissioner erred by failing to apprise petitioner of the existence of several letters received by the Parole Commission and whether petitioner should have been afforded an opportunity to respond to those letters.

I.

The factual background of this case is set forth in detail in our previous opinion in *United States v. Licavoli,* 725 F.2d 1040 (6th Cir.), *cert. denied sub nom. Calandra v. United States,* 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984). The facts may be briefly summarized for purposes of our analysis in the instant case. Petitioner was accused of being the second-in-command of a criminal organization which operated in Cleveland, Ohio. Petitioner's conspiracy and bribery convictions were based on a finding that he paid $15,000 in cash to a secretary who worked at the local office of the Federal Bureau of Investigation. In

---

**1.** Petitioner's bribery and conspiracy convictions were affirmed by this court in *United States v. Lanci and Liberatore,* 669 F.2d 391, 393 (6th Cir.), *cert. denied,* 457 U.S. 1134, 102 S.Ct. 2960, 73 L.Ed.2d 1350 (1982). Petitioner's conviction for conspiracy to violate RICO was upheld on direct appeal in *United States v. Licavoli,* 725 F.2d 1040 (6th Cir.), *cert. denied sub nom. Calandra v. United States,* 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984).

return for the bribe, the secretary provided the names of dozens of confidential FBI informants and other information relating to an FBI investigation of Liberatore and other members of his organization. Petitioner was convicted by a federal jury on the bribery and conspiracy offenses on July 3, 1980.

The facts relating to the RICO charge are somewhat more complicated. In the spring of 1976, petitioner's boss, James Licavoli, decided to eliminate a rival gang leader, Danny Greene. Licavoli and others in his organization contacted a professional assassin by the name of Raymond Ferritto. Ferritto subsequently testified that he met with several of Licavoli's associates regarding the plan to kill Greene. However, Ferritto never met directly with petitioner. Ferritto and others stalked Greene for several months, but their plots were repeatedly thwarted. In the meantime, Liberatore contracted with two other assassins to kill Greene and other members of Greene's organization. Finally, on October 6, 1977, an ambush was arranged to kill Greene during a visit to his dentist. According to the plan, the men hired by Liberatore would attempt to shoot Greene outside the dentist's office. Ferritto assembled a bomb which would be used as a backup. Apparently, the gunmen were unable to get a clear shot at Greene as he emerged from the office, so Ferritto detonated the bomb which had been planted in the car parked adjacent to Greene's automobile. Greene was killed instantly. Several persons, including petitioner, were ultimately prosecuted in connection with this murder.

Three members of Licavoli's organization were convicted of murdering Greene. The state court jury found Liberatore not guilty on the charge of aggravated arson, but the jury was unable to reach a verdict on the murder charge against Liberatore. Following the declaration of a mistrial, Liberatore's attorney moved for dismissal of the murder charge on double jeopardy grounds. The motion was denied; however, the trial court was reversed on appeal. The state then appealed to the Ohio Supreme Court which, on March 9, 1983, ruled in favor of Liberatore and held that a retrial on the charge of murder was barred. The state's petition for a writ of certiorari to the United States Supreme Court was denied on June 27, 1983. (*State v. Liberatore*, 4 Ohio St.3d 13, 445 N.E.2d 1116, *cert. denied sub nom. Ohio v. Liberatore*, 463 U.S. 1214, 103 S.Ct. 3554, 77 L.Ed.2d 1400 (1983)).

After the state appellate court had rendered its decision, but before the Ohio Supreme Court had ruled on Liberatore's case, he was tried, convicted, and sentenced in federal court for conspiracy to violate RICO. As previously noted, petitioner's RICO conviction necessitated a finding by the federal jury that petitioner had, in fact, committed the alleged predicate acts of either murder or conspiracy to commit murder or both in addition to the bribery offense.

Petitioner Liberatore was given his initial parole hearing on June 2, 1983. At the hearing, Liberatore argued that the murder charge should not be considered in setting a parole date because he had been acquitted of that charge by a state jury. In response, the examiners noted that he had been acquitted as a result of a hung jury and that there had not been a finding of "not guilty." The examiners gave Liberatore an offense severity rating of Category Eight because his conviction "involved RICO with the underlying offense [of] murder and bribery of a public official." Accordingly, the examiners recommended that Liberatore's confinement be continued to the expiration of his sentence. Petitioner appealed this decision to the Regional Commissioner and then to the National Appeals Board of the Commission, but both appeals were rejected.

On January 9, 1984, we issued our opinion in *Licavoli* affirming the RICO convictions of petitioner and other members of the Licavoli organization. In upholding the convictions, we held that murder and conspiracy to commit murder were separate offenses under Ohio law and that both could be used as predicate offenses to establish a RICO violation. 725 F.2d at 1045–46. We also held that acquittal in state court of criminal acts did not bar

their use as predicate acts for RICO convictions. 725 F.2d at 1047.

On July 16, 1986, petitioner received a statutory interim parole hearing before the examiner's panel. Petitioner's attorney informed the panel of the decision of the United States Supreme Court to deny the state's petition for certiorari in petitioner's state criminal prosecution case. In light of the fact that petitioner could not be retried on the murder charges, petitioner's attorney argued that the charges should not be considered in selecting the parole guidelines applicable to petitioner's RICO sentence. In its written opinion, the panel stated:

> In view of the information presented by subject's attorney, it does appear to the panel that the Commission should not be holding subject responsible for murder and that would change his guideline range considerably. Therefore, we are rating the offense behavior as Category Five severity because it involved racketeer influenced and corrupt organizations, salient factor is 10, guidelines 24–36 months. Subject has been in custody approximately 54 months, well above the top of the guidelines.
>
> The panel is recommending that subject be paroled in approximately 2½ months.

On August 4, 1986, the Commission's regional office received a letter dated August 1, 1986, from Stephen H. Jigger, a Justice Department attorney in charge of the Cleveland Strike Force. In the letter, Jigger vigorously opposed the petitioner's release and described petitioner's role in the murder conspiracy.

In addition to the letter from Mr. Jigger, the Parole Commission apparently received several other letters from various law enforcement agents and federal prosecutors. During the pendency of this appeal, petitioner learned of the existence of these additional letters through a Freedom of Information Act request. 5 U.S.C. § 552. Petitioner was denied access to the con-

tents of three of the letters; however, he was able to obtain a partial copy of a letter written by Joseph Griffin, Special Agent in Charge, Cleveland Field Office, Federal Bureau of Investigation. In the letter dated August 6, 1986, Agent Griffin recounted the petitioner's lengthy criminal record dating back to the 1930's and urged that he be denied parole.

On August 12, 1986, Thomas Kowalski, the Regional Administrator for the Parole Commission, dictated a memorandum to the Liberatore file noting the receipt of the letter from Stephen Jigger. In the brief memorandum, Kowalski stated that Jigger's letter did not provide any new or significant information and that there was no need to hold a hearing to disclose the letter to petitioner before the Commission rendered its final decision. Kowalski's memorandum contained no reference to the letters sent by Agent Griffin and others.[2] In a separate memorandum also dated August 12, 1986, Kowalski recommended to Acting Regional Commissioner, Carol Pavilak Getty, that she modify the panel's recommended decision pursuant to 28 C.F.R. § 2.24(b)(1), and continue petitioner to the expiration of his sentence. Regional Commissioner Getty wrote the following statement on the second page of Mr. Kowalski's memorandum:

> Mr. Stover [an attorney with the Parole Commission] agrees with this according to our conversation of 8/12/86. I agree this is Cat[egory] 8 offense since Mr. Liberatore was convicted of conspiracy, racketeer influenced and corrupt organization act and bribery of a public official. Subject was convicted of being a member of a conspiracy which planned the murder of Daniel Green [sic].
>
> I agree that new notice of action with modified reasons would clarify.

In a written notice to petitioner, the Commission informed him:

> Your offense behavior has been rated as Category Eight severity because in fur-

---

2. Apparently, the district court was never apprised of the existence of these additional letters and they were not included in the joint appendix initially filed by the parties in this appeal.

Shortly before oral argument in this case, we granted petitioner's motion to supplement the record to include copies of some of the omitted documents under Fed.R.App.P. 10(e).

therance of your federal racketeering offense you conspired to murder Daniel Green [sic]. Your acquittal of the substantive charge of murder under Ohio law does not change the fact that your federal conviction establishes your guilt of the conspiracy offense.

Petitioner appealed the decision to the National Appeals Board of the U.S. Parole Commission, but the Appeals Board affirmed the ruling of the Regional Commissioner.

On February 26, 1987, Liberatore filed a petition for a writ of habeas corpus alleging, *inter alia*, that the Commission misapplied the parole guidelines and that the Regional Commissioner gave improper consideration to the "incorrect and inflammatory" letter from the Cleveland Strike Force attorney. The district court referred the case to a magistrate who issued a report and recommendation that the petition be denied.

On August 17, 1987, the district court issued a ten-page order adopting the magistrate's report and recommendation and denying the petition. Petitioner filed a timely appeal.

## II.

Petitioner raises three arguments on appeal. First, petitioner argues that the Commission should not have considered the predicate offenses of murder and conspiracy to commit murder in rating the severity of petitioner's RICO offense. Second, the petitioner argues that the Regional Commissioner acted beyond the scope of her authority by unilaterally overruling the panel's "findings of fact and conclusions of law" as they related to the severity rating of petitioner's offense. Finally, petitioner contends that the Regional Commissioner improperly considered the allegedly misleading and inflammatory letters and that he should have been granted a hearing in order to respond to the letters. We address each of these issues *seriatim*.

### A.

The United States Parole Commission Regulations, 28 C.F.R. § 2.20, Chapter 11, Subchapter A, Section 1101, provides:

*Racketeer Influenced and Corrupt Organizations* (re: 18 U.S.C. § 1961–63)

Grade according to the underlying offense attempted, but not less than Category Five.

The central dispute over the application of the guidelines focuses on the meaning of "underlying offense." The government contends that the "underlying offense" involved in a RICO violation refers to the predicate acts which are used to establish a pattern of racketeering. In the instant case, Liberatore was convicted of violating 18 U.S.C. § 1962(d) which makes it unlawful for any person to conspire to violate subsection (c)—participating, directly or indirectly, in the conduct of an enterprise which affects interstate commerce through a pattern of racketeering activity. To establish a "pattern of racketeering activity," the government was required to prove beyond a reasonable doubt that petitioner committed at least two acts of racketeering activity. 18 U.S.C. § 1961(5). The definition of racketeering refers to a variety of state and federal offenses including, *inter alia*, "any act ... involving murder ... [or] bribery ... which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). The trial court instructed the jury that petitioner was charged with three acts of racketeering activity: (1) the murder of Daniel Greene; (2) conspiracy to murder Daniel Greene; and (3) bribery of an employee of the FBI. By finding petitioner guilty of the section 1962(d) charge, the jury necessarily determined that the evidence showed beyond a reasonable doubt that petitioner had either murdered Mr. Greene or conspired to murder him since at least two acts of racketeering activity are required to establish a "pattern."

According to the last statement of reasons given by the Parole Commissioner, it is clear that the Commission considered the "underlying offense attempted" to be conspiracy to commit murder. ("Your offense behavior has been rated as Category Eight Severity because in furtherance of your

racketeering offense you conspired to murder Daniel Green [sic]"). Under the guidelines, murder is rated as a Category Eight offense (28 C.F.R. § 2.20, Chapter 2, Subchapter A, 201) and conspiracy is rated in the same category as the underlying offense (28 C.F.R. § 2.20, Chapter 1, 101).

In contrast, petitioner argues that since he was convicted under section 1962(d) of conspiracy to violate section 1962(c), the substantive provision contained in section 1962(c) is the "underlying offense attempted" rather than the predicate acts of murder and conspiracy to commit murder and bribery. Thus, petitioner contends that his offense severity rating should be Category Five—the minimum severity allowable under 28 C.F.R. 2.20, Chapter 11, Subchapter A, Section 1101. According to petitioner, "the object of the conspiracy, or the underlying offense, was racketeering or operation of a racketeering enterprise and the charge of murder was, at best, a means of carrying out the underlying offense." Therefore, petitioner concludes, racketeering in and of itself was the underlying offense and, hence, Category Five should be applied.

Petitioner does not cite any cases which support his interpretation of the parole guidelines. Instead, petitioner attempts to rely on our opinion in *Licavoli* wherein we held that petitioner and his codefendants could be convicted under RICO even though they had been acquitted in state court of committing some of the offenses which were used to establish a pattern of racketeering activity in their RICO prosecution. Petitioner argues that the thrust of our opinion in *Licavoli* was that operating a criminal enterprise in violation of RICO is a separate offense which should be considered independently from the predicate acts by means of which the enterprise conducts its activities. In his brief, petitioner quotes from a portion of the *Licavoli* opinion in which this court stated:

> [RICO] forbids "racketeering" not state offenses per se. The state offenses referred to in the federal act are definitional only; racketeering, the federal crime, is defined as a matter of legislative draftsmanship by a reference to state

law crimes. This is not to say ... that the federal statute punishes the same conduct as that reached by state law. The gravamen of section 1962 is a violation of federal law and "reference to state law is necessary only to identify the type of unlawful activity in which the defendant intended to engage." *United States v. Cerone*, 452 F.2d 274, 286 (7th Cir.1971). (Footnote omitted).

725 F.2d at 1047 (quoting *United States v. Frumento*, 563 F.2d 1083, 1087 (3d Cir. 1977)). Applying this reasoning to the parole context, petitioner contends that the predicate offenses are definitional only and that the underlying offense of a RICO conspiracy conviction is the act of racketeering itself.

Although petitioner's argument displays a considerable amount of ingenuity, we find that it must fail for several reasons. First, the Parole Commission's interpretation of its own regulation should be accorded deference by a reviewing court unless it is clearly erroneous or inconsistent with the regulation. *Williams v. U.S. Parole Commission*, 707 F.2d 1060 (9th Cir.1983). In the instant case, the Commission has interpreted the phrase "underlying offense attempted" to encompass the predicate criminal acts which serve as the basis of the RICO conviction. We find nothing clearly erroneous or inconsistent in this interpretation. On the contrary, reference to the various predicate acts is clearly contemplated by the regulation which provides for a range of possible severity ratings "according to the underlying offense attempted, but not less than Category Five." The Commission could rationally determine that a person who participated in a criminal enterprise involving murder should be punished more severely than one who participated in a criminal enterprise involving a less serious crime such as gambling or mail fraud. In establishing a minimum severity rating of Category Five for RICO offenses, the Commission recognized that the existence of any criminal enterprise often poses a threat to society and, therefore, involvement in such an organization warrants a significant punishment. Yet, by instruct-

ing parole decisionmakers to consider the "underlying offense"—which could reasonably be interpreted as the predicate acts of racketeering activity as defined in section 1961—the Commission insured that the parole authorities would have the discretion to impose longer sentences in cases involving more serious types of criminal activity.

Under petitioner's interpretation of the regulation, this flexibility would be eliminated. Instead, a person convicted of conspiracy to violate RICO under 18 U.S.C. § 1962(d) would automatically be assigned an offense severity rating of Category Five. Thus, according to petitioner, a prisoner, such as himself, who was convicted of conspiring to operate a criminal organization which regularly employed professional assassins, should receive the same offense severity rating as a prisoner convicted of conspiracy to commit mail fraud through a check-kiting scheme. Not only does this interpretation conflict with the intent of the regulation which clearly envisions a range of possible offense severity ratings, it also runs contrary to the fundamental principles of fairness in sentencing, i.e., similar crimes should result in similar sentences, and the length of the sentence should be proportionate to the severity of the crime.

Moreover, we do not find anything in our opinion in *Licavoli* which would preclude the Commission from interpreting the regulatory language "underlying offense attempted" to include the predicate acts which are contained in the definition of "racketeering activity" in section 1961(1). First, *Licavoli* involved the issues raised in the petitioner's appeal from his federal criminal conviction, and our opinion did not address any questions relating to the interpretation of parole guidelines. Second, *Licavoli* cannot be reasonably read to prohibit the Parole Commission from considering the conspiracy to murder charge when the *Licavoli* court found no error in allowing a federal jury to make a finding on the same offense to determine petitioner's guilt of the RICO conspiracy charge. Indeed, the predicate offenses of murder and bribery are essential to establishing the RICO offense and therefore should be considered in determining an appropriate sentence.

■ Petitioner also argues that the Parole Commission was precluded from considering the murder charges because petitioner was acquitted on those charges in state court and can no longer be retried for those crimes. In support of this contention, petitioner directs our attention to 28 C.F.R. § 2.19(c) which provides in pertinent part:

> However, the Commission shall not consider in any determination charges upon which a prisoner was found not guilty after trial unless;
>
> (1) Reliable evidence is presented that was not introduced at trial (e.g., a subsequent admission or other clear indication of guilt) or;
>
> (2) The prisoner was found not guilty by reason of his mental condition.

Again we find several flaws in petitioner's argument. First, as previously noted, petitioner's state court criminal prosecution did not result in a verdict of "not guilty"; rather, a mistrial was declared after the jury was unable to reach a decision. Thus, by its terms, the regulation quoted by petitioner does not apply to his situation. Second, the regulation contained in section 2.19 was recently amended by adding paragraph (c)(3) at 52 Fed.Reg. 22778, June 16, 1987, effective July 16, 1987. The additional exception provides:

> [T]he Commission shall not consider in any determination charges upon which a prisoner was found not guilty after trial unless:
>
> . . . .
>
> (3) the acquittal is contradicted by, or inconsistent with, a conviction by the same or another trial jury.

28 C.F.R. § 2.19(c)(3) (1987). According to the Commission's summary of the final rule:

> The amendment now makes clear the Commission's *original intent* that a verdict of not guilty does not preclude consideration of a prisoner or parolees underlying criminal behavior, when the same evidence that resulted in the acquit-

tal has also resulted in an inconsistent verdict of guilty.

52 Fed.Reg. 22777 (1987) (emphasis added).

In the instant case, the federal jury which found petitioner guilty of conspiring to violate RICO necessarily found that he also committed the alleged predicate acts of murder or conspiracy to commit murder. Thus, even though petitioner was not convicted of those crimes in state court, the Commission was still free to consider the charges because the state court acquittal was "contradicted by, or inconsistent with, a conviction" on the RICO charge by the federal jury.

Finally, any questions about the validity of the RICO conviction and the findings of the federal jury were resolved against the petitioner in *United States v. Licavoli* where this court upheld the RICO convictions of petitioner and his codefendants. Thus, our decision in *Licavoli* does more to undermine petitioner's arguments than it does to support them.

Accordingly, since the Commission's decision to classify petitioner's offense severity rating at Category Eight is supported by a rational basis, we find the district court was correct in refusing to overturn the Commission's decision.

## B.

■ Petitioner's second claim of error is based on a procedural argument in which he contends that the Regional Commissioner exceeded the scope of her authority by unilaterally reversing the decision of the parole panel. The Regional Commissioner acted pursuant to 28 C.F.R. § 2.24(b)(1) which provides:

[A] Regional Commissioner may:

(1) On his own motion, modify or reverse the recommendation of a hearing examiner panel that is outside the guidelines to bring the decision closer to (or to) the nearer limit of the appropriate guideline range....

Petitioner argues that the panel's recommendation was not "outside the guidelines" since the panel concluded that a Category Five offense severity rating was appropri-

ate and petitioner's time served had already exceeded the upper limit for someone with a Category Five rating with a salient factor score of 10 (24–36 months). According to petitioner, since the release date set by the parole panel was not "outside the guidelines" for a Category Five offense, the review of the decision by the Regional Commissioner was governed by 28 C.F.R. § 2.24(a). Under section 2.24(a), the Regional Commissioner does not have the authority to act unilaterally but, rather, may only render his or her vote and recommendation and then send the case to the National Commissioners who either concur or dissent.

We reject this argument for two reasons. First, according to the Commission's Rules and Procedure Manual, the Regional Commissioner may use section 2.24(b)(1) and modify the panel's recommendation on his or her single vote where the panel has made a "non-judgmental" error. (Manual at 84). In the instant case, the Regional Commissioner found that the panel had made a "non-judgmental" error by applying the wrong severity rating to petitioner's offense. Therefore, the Regional Commissioner concluded that it was within her authority to unilaterally correct the panel's error pursuant to section 2.24(b)(1) because once the proper guideline was applied, i.e., Category Eight, the parole date set by the panel was clearly "outside the guideline." As previously noted, we must defer to the Commission's interpretation of its own regulations unless they are clearly incorrect or inconsistent with the purpose of the regulations. In this case, we cannot say that the Commission's interpretation of section 2.24(b)(1) as set forth in its Manual which allows the Regional Commissioner to act unilaterally to correct "nonjudgmental" errors, such as a misapplication of the guidelines, is irrational or inconsistent.

■ In addition, assuming *arguendo* that the Regional Commissioner was incorrect in acting pursuant to section 2.24(b)(1), the petitioner cannot show that he was prejudiced by this action. After receiving his notice of action from the Regional Commissioner's office, petitioner submitted an

appeal to the National Appeals Board and had his case reviewed by the same body that would have reviewed the case had Regional Commissioner Getty utilized section 2.24(a) rather than section 2.24(b)(1). The National Appeals Board agreed with the Regional Commissioner's assessment and upheld her decision. Thus, the final result would have been the same regardless of which appeal procedure was utilized. *See Scott v. Clark,* 761 F.2d 1524, 1527 (11th Cir.1985) (subsequent approval of Regional Commissioner's decision by National Appeals Board constitutes substantial compliance with 28 C.F.R. § 2.24(a)).

### C.

■ We now consider petitioner's third and final claim of error. In his brief on appeal, petitioner argued that the August 1, 1986, letter sent by the Justice Department Attorney, Stephen Jigger, to the Regional Parole Commissioner contained statements that were "patently false" and "inflammatory." Petitioner maintains that he should have been afforded a hearing in order to respond to the letter before the Regional Commissioner made her decision. Petitioner argues that he was entitled to notice and a hearing under 28 C.F.R. § 2.19(c) which provides in part:

The Commission may take into account any substantial information available to it in establishing the prisoner's offense severity rating ... and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond.

Having reviewed the letter, we agree with the Commission's assessment that the letter did not contain any new and significant information since it merely reiterated that the RICO conviction was predicated on, *inter alia,* a conspiracy to murder offense and this information was already available to petitioner and the Commission.

Thus, if the letter sent by Mr. Jigger had been the sole source of extraneous information regarding the petitioner, we would have been inclined to affirm the district court's ruling that petitioner was not enti-

tled to a hearing before the Commission regarding the contents of the letter.

During the pendency of this appeal, however, petitioner has uncovered additional evidence which shows that the Commission was in receipt of several other letters sent by various federal agents and prosecutors. Presumably, these letters were intended to persuade the Commission not to grant the petitioner's request for parole. Unlike Mr. Jigger's letter, however, these additional letters were not before the district court.

Title 28 C.F.R. § 2.55(f) pertains to the receipt of "late received documents":

*Late received documents.* If a document containing new and significant adverse information is received after a parole hearing but before all review and appellate procedures have been concluded, the prisoner shall be given a rehearing on the next docket. A copy of the document shall be forwarded to the institution for inclusion in the prisoner's institutional file. The Commission shall notify the prisoner of the new hearing and his right to request disclosure of the document pursuant to this section. If a later received document provides favorable information, merely restates already available information or provides insignificant information, the case will not be reopened for disclosure.

Since the district court did not have an opportunity to evaluate the significance of these additional letters, we find it appropriate to remand the case for the limited purpose of determining whether the Commission violated the regulatory requirement of 28 C.F.R. § 2.55(f) by failing to notify petitioner of the existence of the additional letters and by failing to afford him a rehearing to respond to the letters.

In remanding this case to the district court we refrain from expressing any opinion as to whether or not petitioner was entitled to a rehearing before the Commission under 28 C.F.R. § 2.55(f). We find that in light of the newly discovered evidence submitted by the petitioner, it is most appropriate that this determination should be made by the district court in the first instance.

Accordingly, the judgment of the district court is AFFIRMED IN PART and the case is REMANDED for further proceedings not inconsistent with this opinion.