**UNITED STATES of America ex rel. James SCHIANO # 12699–054,**

**v.**

**Dennis LUTHER, Warden FCI McKean.**

**James Schiano, Appellant.**

**No. 91–3263.**

United States Court of Appeals, Third Circuit.

Argued Oct. 7, 1991.

Decided Jan. 23, 1992.

---

Cheryl J. Sturm (argued) West Chester, Pa., for appellant.

Thomas W. Corbett, Constance M. Bowden (argued), Office of U.S. Atty., Pittsburgh, Pa., for appellees.

Before MANSMANN, NYGAARD and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

The appellant, James Schiano, was convicted in the United States District Court for the District of New Jersey for conspiracy with intent to distribute cocaine in violation of 21 U.S.C. § 846. He was sentenced to eight years in prison.

In this habeas corpus action, brought pursuant to 28 U.S.C. § 2241, Schiano raises two issues on appeal. First, that the Commission violated 18 U.S.C. § 4208(b)(2) and 28 C.F.R. § 2.55 by failing to disclose to Schiano the file of a coconspirator, Thomas Paskas, which the Commission had reviewed in making its decision. Second, that the Parole Commission did not follow its own regulations in failing to "carve out" Schiano's role in the conspiracy when making its parole determination. Schiano appeals from the District Court's denial of his petition. We hold that while the Commissioner had a rational basis for determining Schiano's role in the conspiracy, it nevertheless violated its own regulations in failing to disclose to Schiano material on

which it relied in reaching its parole determination.

■ We have jurisdiction under 28 U.S.C. § 1291 and our review is plenary. *Zannino v. Arnold,* 531 F.2d 687, 691 (3d Cir.1976).

## I.

Schiano's initial parole hearing was held on September 6, 1989, at which time the Examiners Panel assigned a Category Six Offense Severity Rating to Schiano. Referring to cocaine offenses, the parole regulations provide that "[w]here the Commission finds that the offender had only a peripheral role" the Commission should grade the offender's conduct as Category Six. 28 C.F.R. § 2.20, Subchapter c, Part 921(c). The term "peripheral role" refers to conduct as a courier, chauffeur, deck hand or the like. It does not include individuals with either decision making or supervising authority. 28 C.F.R. § 2.20, Chapter 13(b).

The panel unanimously recommended that Schiano be held accountable for six kilograms of cocaine, rather than holding him accountable for the distribution of over 150 kilograms of cocaine distributed by the conspirators.[1] A Salient Factor Score of 9, when combined with this Offense Severity Rating of 6, resulted in Schiano being subject to 40–52 month's imprisonment. The panel recommended that Schiano be paroled after 48 months imprisonment. 28 C.F.R. § 2.20 (Guidelines for Decisionmaking).

The Regional Administrator disagreed with this recommendation. He rated Schiano's Offense Severity at 8, a level which involves possession with intent to distribute in excess of 18.75 kilograms of cocaine. The Administrator based this rating on the fact that Schiano should be considered a large scale distributor within the ring of conspirators who had distributed in excess of 150 kilograms of cocaine and who had direct contacts with a Columbian drug source. He further noted that, as Schiano's culpability was ranked equal to that of his coconspirator Thomas Paskas, he should receive the same Offense Severity Rating of Eight that was received by Paskas. The Administrator attached Paskas' file to Schiano's file when he referred the case to the Regional Commissioner.

Because both the Regional Commissioner and the Administrator disagreed with the unanimous recommendation of the Examiners Panel, Schiano's case was referred to the National Commissioners, pursuant to 28 C.F.R. § 2.24(a). The National Commissioners approved the Category Eight Offense Severity Rating in a Notice of Action dated October 23, 1989, and Schiano was thus denied parole.

Schiano appealed this decision to the National Appeals Board, which affirmed the National Commissioners' decision, stating that Schiano had been involved in a conspiracy to distribute over 18.75 kilograms of cocaine. Schiano then filed a Petition for Writ of Habeas Corpus, claiming that the Paskas report, which the Regional Administrator had included with Schiano's file, had not been disclosed to him and that the Parole Commission had not identified his role in the conspiracy.

The Parole Commission responded that 18 U.S.C. § 4208(b)(2), which requires that the prisoner be given "reasonable access to a report or other document to be used by the Parole Commission in making its determination," did not apply to the disclosure of Paskas' file because it was not a document or report within the meaning of that provision.

In response to Schiano's second claim that his role in the conspiracy had not been "carved out," the government contended that under *Pinkerton v. United States,* 328 U.S. 640, 648, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946), an individual may be held responsible for the actions of codefendants

---

1. On January 29, 1988, Schiano's attorney took issue with the Presentence Investigation Report, claiming that Schiano believed he had sold only two kilos of cocaine and not six kilos (A 169a). He also claimed that his involvement was only six weeks long. On July 19, 1988, however, as a part of his Pre–Review Initial Hearing, his attorney asked that Schiano be held accountable for having distributed no more than six kilos of cocaine. (A 116a)

that were "reasonably foresee[able] as a necessary or natural consequence of the unlawful agreement." *See* 28 C.F.R. § 2.20, Chapter 13, Subchapter A, Note 4.

The district court denied Schiano's petition for Writ of Habeas Corpus. This appeal followed.

## II.

■ Schiano raises as his first issue on appeal: "Did the Parole Commission violate 18 U.S.C. § 4208(b)(2) or 28 C.F.R. § 2.55 by not disclosing documents used in making the parole determination?" We note that Schiano's parole hearing had been conducted on September 6, 1989, some five years after 18 U.S.C. § 4208(b)(2) had been repealed.[2]

Schiano had pled guilty to an offense charging conspiracy from August 1985 to May 1986 (A 173a). Despite its repealer, Section 4208 remained applicable, for ten years to individuals who, like Schiano, committed an offense prior to the effective date of the repeal of this section on November 1, 1987. Section 4208, prior to its repeal, required among other things that "[a]t least thirty days prior to any parole determination proceeding, the prisoner shall be provided with ...(2) reasonable access to a report or other document to be used by the Commission in making its determination." Under the savings provision of this statute, *see* note 2, *supra*, this section remains applicable to this case. The repeal of § 4208(b)(2), however, does not affect Schiano's argument on appeal because, with the exception of minor differ-

ences, the regulations which were promulgated, have at all relevant times required that each "prisoner shall be given notice of his right to request disclosure of the reports and other documents to be used by the Commission in making its determination." 28 C.F.R. § 2.55(a).

The regulations also provide that "[t]he scope of disclosure under 28 C.F.R. 2.55(a) is limited to reports and other documents to be used by the Commission in making its determination." As stated, these provisions are derived from the now-repealed statute 18 U.S.C. § 4208(c). To the extent that any such report or document may be deemed exempt because it contains (1) diagnostic opinions or (2) material which would reveal a source of information obtained under a promise of confidentiality, or (3) any other information which, if disclosed might result in harm to any person, the non-disclosable document may be summarized in accordance with § 2.55(d).[3]

The government has argued that Schiano's rights were not violated when the Parole Commission did not disclose the contents of Paskas' file, claiming that the Commission "relied on the information in Paskas' file only to determine that Schiano was at least as culpable as Paskas was." (Appellee's Brief at 14–15). The record upon which the government and Schiano relied at the time of appeal apparently characterized and ranked Schiano and Paskas at the third level of a seven-level ranking in culpability.

We say "apparently" because at the time we heard oral argument on Schiano's appeal, neither Schiano, nor the U.S. attorney

---

2. **Section Applicable for Ten Years After Repeal** "... This section [18 U.S.C. § 4208] ... remains applicable for ten years to individual who committed offense or act of juvenile delinquency prior to Nov. 1, 1987."

3. 28 C.F.R. §§ 2.55(c) and (d) provide:
    (c) *Exemption to disclosure (18 U.S.C. 4208(c)).* A document may be withheld from disclosure to the extent it contains: (1) Diagnostic opinions, which, if known to the prisoner, could lead to a serious disruption of his institutional program;
    (2) Material which would reveal a source of information obtained upon a promise of confidentiality; or

    (3) Any other information which, if disclosed, might result in harm, physical or otherwise to any person.
    (d) *Summarizing nondisclosable documents.* If any document or portion of a document if found by the Commission, the Bureau of Prisons or the originating agency to fall within an exemption to disclosure, the agency shall:
    (1) Identify the material to be withheld; and
    (2) State the exemption to disclosure under paragraph (c) of this section; and
    (3) Provide the prisoner with a summary of the basic content of the material withheld with as much specificity as possible without revealing the nondisclosable information.

representing Warden Luther, nor the members of this panel, had been privy to the Paskas report which the Regional Administrator attached to Schiano's file. Schiano claimed in his brief that Paskas, who had originally been sentenced to 12 years, had had his sentence reduced to 9 years. The government responded that Paskas' sentence was still one year greater than Schiano's 8 year sentence.

Both Schiano and the government joined issue on what constituted a "report or other document" as set forth in the regulations. Schiano, claiming that he had no knowledge of Paskas' file before the parole hearing and that it was this file that resulted in the Regional Administrator and Commissioner increasing Schiano's Offense Severity Rating and denying parole, argued persuasively that the Paskas file could not be exempt from disclosure because it did not fall within any of the exempt categories of the regulation.

The government, on the other hand, following the reasoning of the Parole Commissioners and the district court, contended that reviewing Paskas' file did not constitute reviewing a "report or document" because the Commission was doing no more than reviewing its own decisions so that it could ensure uniformity of decisions for codefendants of similar culpability. (Appellee's Brief at 18). The government additionally claimed that Congress, in enacting 18 U.S.C. § 4208(b) from which the present regulations are derived, had no intent to intrude upon the strong privacy interests that a codefendant would have in not having the contents of his file revealed to another defendant. (*Id.*)

The plain language of the statute and of the accompanying regulations, however, do not support the government's argument. The regulation clearly requires disclosure of "reports and other documents to be used by the Commission in making its determination." 28 C.F.R. § 2.55(a).[4] From what appears in the record before us, the Com-

mission in considering Paskas' file, linked Schiano to Paskas in determining Schiano's parole status. Whatever additional information was disclosed by the Paskas file when it was examined by the Regional Administrator and the subsequent reviewing Commissioners was never made available to Schiano. Schiano thus argues with some force that, by refusing him the right to inspect the Paskas file, the Commission had perpetrated the very injustice against which the regulations were intended to protect.

Schiano expresses his claim in this respect by arguing:

Denying Schiano the opportunity to address the theory that he and Paskas should be regarded as relative equals, the Commission denied Schiano the opportunity to respond to that theory. *Patterson v. Gunnell,* 753 F.2d 253, 256 (2d Cir.1985) [Parole applicant must be given advance disclosure so that he can rebut information to be used against him].

Had Schiano been given the chance, he would have established that the differences far outweighed the similarities.

For instance, Schiano was sentenced to 8 years' CAG; Paskas was sentenced to 12 years' CAG.

Given the chance to address the Commission's file on Paskas, Schiano would have established (1) that Paskas ultimately received a sentence of nine years, not twelve years, and (2) the sentencing judge specifically determined Paskas to be a drug courier, not a supplier.

(Appellant's Brief at 9).

Schiano finds some support for his argument in *Patterson v. Gunnell,* 753 F.2d 253, 256 (2d Cir.1985), *Anderson v. United States Parole Comm'n,* 793 F.2d 1136 (9th Cir.1986), and *Liberatore v. Story,* 854 F.2d 830 (6th Cir.1988).

---

**4.** The legislative history of this section elucidates this phrase: "the phrase 'report or other document' in Section 4208(b)(2) refers to those materials in the institution's files which the Commission looks at in making its parole release determinations." *House Conf. Report No. 94–838,* Joint Explanatory Statement of the Committee of Conference, 29, *reprinted in* U.S.Code Cong. & Admin.News, 335, 361 (1976).

In *Patterson,* the Second Circuit, while agreeing that the Commission had the discretion and authority to set Patterson's presumptive parole date at 52 months, nevertheless held that, where the National Appeals Board had information unknown to Patterson and on which it relied, Patterson's case had to be returned for a new parole hearing. At the new parole hearing, Patterson would be afforded "notice of and an opportunity to respond to whatever aggravating circumstances the Commission proposes to rely upon to go above the correct guideline," so that he, Patterson, would not be "deprive[d] ... of a procedural protection guaranteed by the Commission's regulations." 753 F.2d at 255, 256.

In *Anderson,* 793 F.2d 1136 (9th Cir. 1986), the Ninth Circuit held that the Parole Commission had violated Anderson's statutory hearing rights when it based its parole determination on a report that was not made reasonably accessible to Anderson in advance of the hearing. Anderson referred to 18 U.S.C. § 4208(b)(2) which required that "at least thirty days prior to any parole determination proceeding, the prisoner shall be provided with ... reasonable access to a report or other document to be used by the Commission in making its determination," *id.* at 1137, and concluded that § 4208(b)(2) was unambiguous and required that Anderson be "entitled to review and contest the information on which the Commission's decision turned." *Id.* at 1138.

In *Liberatore v. Story,* 854 F.2d 830 (6th Cir.1988), Liberatore complained among other things that the Parole Commission had failed to apprise him of a number of letters which had been sent by various law enforcement agents urging that parole be denied. Liberatore asserted that he should have been allowed to respond to these letters. The relevant regulation in Liberatore involved 28 C.F.R. § 2.55(f) pertaining to late-received documents and the court remanded to the district court for a hearing before the Commission.

While we recognize that in none of the three cases relied upon by Schiano was the subject of a co-defendant's file involved and while we also recognize that none of the three cases relied on § 2.55(a), the regulation at issue here, nonetheless, the overriding principle which we derive from these regulations and these authorities is that the Commission may not rely upon information denied to the prisoner and thereby preclude the prisoner from challenging that information.

Moreover, an examination of the regulation exempting information from disclosure reveals that co-defendants' files are not deemed to be exempt from disclosure. Nor is there any indication in the regulations that the Commission's own decisions are to be withheld from the prisoner if reliance on those decisions forms the basis for the Commission's parole determination. Although the Paskas file had not been disclosed to us prior to oral argument, it has now been furnished to us at our order. While our reading of the Paskas file will not afford much comfort to Schiano, we, just as the district court and the Commissioners, have not had the benefit of Schiano's observations made after his examination of the authorized information. We will not, however, at this time or at this stage of the proceeding, attempt to characterize or analyze the Paskas file contents. We deem the task of providing Schiano with the undisclosed Paskas information, a task in which the district court, rather than this court, should engage.

Indeed, the privacy interests stressed by the government may well require the information contained in the Paskas file to be summarized by the Commission as provided in 28 C.F.R. § 2.55(d). *See* note 3, *supra.* If that regulation is relevant, it would provide Schiano for the first time with the "basic content of the [Paskas] material withheld with as much specificity as possible without revealing the non-disclosable information." 28 C.F.R. § 2.55(d)(3).

We are persuaded that the entire thrust of the statute and regulations mandates that Schiano have disclosed to him either in gross or in summarized form, that information on which the Commission relied in denying him parole and in establishing his

Offense Severity at a higher level than that which the Examiners Panel assigned.[5]

In requiring that the district court review the Paskas file and provide either the file or a summary of the file to be made available to Schiano, we do no more than fulfill the objective of the statute and the regulations, which is that both the Commission and the prisoner should have available all the relevant information on which parole determinations are made.[6]

### III.

Schiano's second argument on appeal is that the Parole Commission violated its own regulations by not "carving out" Schiano's role in the conspiracy. Claiming that he was not accountable for his associates' actions, Schiano calls our attention to 28 C.F.R. § 2.20, Chapter 13, Subchapter A, Note 4, which reads:

> The prisoner is to be held accountable for his own actions and actions done in concert with others; however, the prisoner is not to be held accountable for activities committed by associates over which the prisoner has no control and could not have been reasonably expected to foresee.

Schiano supports his argument by referring to a statement made in *Roberts v. Corrothers*, 812 F.2d 1173, 1180 (9th Cir. 1987), to the effect that the actual offense behavior of the individual prisoner must be determined by the Commission.

■■■ We do not read *Roberts*, even if it was binding upon us, which it is not, as a mandate that the Parole Commission must "carve out" each prisoner's culpability. As *Roberts* points out, the Parole Commission has broad discretion and may in the exercise of that discretion determine whether a prisoner's involvement in the conspiracy charged was peripheral or managerial, *Roberts*, 812 F.2d at 1180–82, and whether the prisoner had control over activities committed by associates and which he could reasonably have been expected to foresee. 28 C.F.R. § 2.20, Chapter 13, Subchapter A, Note 4. Thus a prisoner who has exercised control over his associates, will be held responsible not only for his personal involvement but also for those reasonably foreseeable activities committed by his co-conspirators. *See Campbell v. United States Parole Comm'n*, 704 F.2d 106 (3d Cir.1983) (Parole Commission could find prisoner responsible for murder by co-defendants which was foreseeable under the facts of the case).

After oral argument, a panel of this court filed an opinion discussing the same issue which Schiano has raised here. *See United States ex rel. Farese v. Luther*, 953 F.2d 49 (3d Cir.1992). In *Farese*, as here, the court focused on whether the prisoner could have controlled and reasonably foreseen the actions of his coconspirators.

In *Farese*, one of the coconspirators had been rated category six, and Farese him-

---

**5.** 28 C.F.R. § 2.55(f) provides among other things that "[i]f a document containing new and significant adverse information is received after a parole hearing but before all review and appellate procedures have been concluded, the prisoner shall be given a rehearing on the next docket." If the information in Paskas' file is to be considered "new and significant adverse information," that provision of the regulations would also support Schiano's claim and our holding. In the absence of a finding on this record by the Commission that § 2.55(f) is implicated, we express no opinion in this respect. We note only that regulation § 2.55(f) is consistent with the disclosure principle of the regulations which we have discussed.

**6.** In this connection, we observe that the Federal Rules of Criminal Procedure require that

findings made by the district court "shall be appended to and accompany any copy of the Presentence Investigation Report thereafter made available to the Bureau of Prisons or the Parole Commission." Fed.R.Crim.P. 32(c)(3)(D).

> 18 U.S.C. § 3553(c) also requires among other things that "The clerk of the court shall provide a transcription of the court's statement of reasons to the Probation System, and, if the sentence includes a term of imprisonment, to the Bureau of Prisons."

These directions have been implemented by our decisions which stress the importance of compliance with these regulations. *See United States v. Gomez*, 831 F.2d 453 (3d Cir.1987); *United States v. Katzin*, 824 F.2d 234 (3d Cir. 1987); *United States v. Mays*, 798 F.2d 78 (3d Cir.1986).

self, who had been rated category seven,[7] claimed that he had only been involved "...in the cocaine distribution ring for approximately ten months and distributed approximately eight ounces of cocaine monthly, for an aggregate amount of slightly over 2 kilograms." In applying Farese's actions to the standard prescribed by 28 C.F.R. § 2.20, Ch. 13, Subch. A. Note 4, the *Farese* majority held that because Farese was a purchaser of a small quantity of drugs per month, he was in no position to control and foresee the activities of his coconspirators, "much less [know] there were coconspirators, their identity, or the scope of their activities." *Farese*, at 52.

■ Accordingly, the *Farese* court, over Chief Judge Sloviter's dissent, vacated the district court's judgment of sentence and directed that Farese's offense severity rating be reduced from category seven to category six. It did so by holding that no facts had been shown to the Parole Commission which established that Farese was responsible for the distribution of more that 2.5 kilograms of cocaine, rather than the 15 kilograms for which he had originally been rated. The *Farese* court's opinion, in holding that there was no rational basis for the Commission's determination, concluded that "there was no evidence for which the Commission's determination could have found the elements of control and foreseeability."[8]

The record in *Schiano*, however, is clearly distinguishable from the record in *Farese*. Unlike *Farese*, the sentencing court in *Schiano*, as we point out *infra*, found Schiano to be "a major supplier ... between Columbians and Militello, of a very significant and serious quantity of cocaine ..." Moreover, the government emphasized that Schiano, as a supplier, was in a position of control as it was Schiano who had the Columbian source and it was Schiano who chose to deal with the Militello–Tedesco conspiracy.

Schiano's presentence report (PSI) set out the evidence gathered through government wiretaps of the Militello conspiracy during the time of Schiano's involvement.[9] In essence, the report names Schiano as one of the four individuals who, during a two month period, provided cocaine to Militello and Tedesco. The amount of cocaine provided varied between one and three kilos on each of ten occasions, in addition to the cocaine that had actually been seized as evidence. The PSI recited:

> In addition to the cocaine actually seized as evidence, the wiretapped conversations, as confirmed by information from cooperators, demonstrate that Militello and Tedesco received and distributed between one and three kilos of cocaine on each of approximately ten other occasions during the two-month period of the wiretaps. Their sources on these occasions were defendants Norberto Saitta, Thomas Paskas, Stephen Piparo and James Schiano and other indicted co-conspirators.

(A 162a: Government's Summary of Offense and Defendants' Roles).

The government presented evidence that "Schiano delivered one kilo of cocaine to Militello in mid April, three more kilos on April 26, 1986 and two more kilos one week later. The date for that is May 2, 1986."

---

**7.** Farese's Offense Severity Rating of seven, together with his Salient Factor Score of seven, led to a sentence range of 64–92 months. A prisoner with a category six Offense Severity Rating, and a Salient Factor Score of seven would have a sentence range of 52 to 64 months. *See* 28 C.F.R. § 2.20. Farese received a 12–year sentence. The Regional Commission set presumptive parole at six years, which included a 12–month credit for superior program achievement.

**8.** We assume that the lack of evidence in the record resulted from the district court's and the Presentence Investigation's failure to find that Farese knew there were coconspirators, the identity of the coconspirators, the scope of the activities of the conspiracy, and the amount of Farese's distribution.

**9.** "[T]he government estimates that the Militello–Tedesco operation distributed more that 150 kilograms of cocaine during the two years of the conspiracy about which information is available. The street value of the cocaine is estimated to be more than 60 million dollars." (A 162a).

(A 137a). At Schiano's sentencing, the court stated:

I believe from what I know about this case that this defendant was indeed a major supplier, albeit a broker between, as he has said, between Columbians and Militello of a very significant and serious quantity of cocaine over a short period of time.

(A 139a).

The government summed up Schiano's involvement in the conspiracy as follows:

More specifically, the nondisputed facts show that appellant [Schiano] had a Columbian source, which solicited his assistance in locating individual[s] who could distribute kilogram quantities of cocaine. [Schiano], in turn, distributed the cocaine to the Mitiello–Tedesco [sic] organization. This organization was a major narcotics distribution ring, which had multiple sources of supply, and overall was estimated to have distributed 150 kilograms of cocaine worth $60,000,000. It was reasonable for the Commission to conclude, therefore, that [Schiano] approached the Mitiello–Tedesco [sic] ring because he knew it was capable of distributing large quantities of cocaine. It is, therefore, not unreasonable to hold him responsible for quantities of cocaine in excess of that which he specifically supplied to the conspiracy. Additionally, to the extent that [Schiano] acted as one of the suppliers of cocaine to the conspiracy, he was in a position of control, as he is the one who had the Columbian source, and chose to deal with the Mitiello–Tedesco [sic] conspiracy. Presumably, he did so because he knew that they would be able to distribute large amounts of cocaine.

(Appellee's Brief at 24–25).

We are satisfied that the Commission properly applied its own regulations when it determined Schiano's Offense Severity Rating and determined that his role in the conspiracy was sufficient to hold him responsible for conspiring to distribute in excess of 18.75 kilos of cocaine. Thus, the record in *Schiano* not only provided a rational basis for the Commission's determination, but it did not require the kind of Parole Commission inquiry and factfinding implicitly required by *Farese*. Once it has been determined that the existing record provides a rational basis for the decision of the Parole Commission, we do not read the regulations or *Farese* as requiring that the prisoner be afforded still another round of factfinding.

The position urged by Schiano would, however, require factfinding by the Parole Commission for every parole determination, even where the existing record revealed the prisoner's particular role in the conspiracy and contained determinations respecting the prisoner's control and foreseeability. Because we are reviewing pre-Guidelines cases—cases where sentencing proceedings have been concluded—no effective supervisory rule can now be fashioned which would require district court judges at the time of sentencing to characterize the defendant's role in the conspiracy and to provide a record respecting the control and foreseeability factors found in 28 C.F.R. § 2.20, Chapter 13, Subchapter A, Note 4.

■ This does not mean, however, that we must impose upon the Parole Commission a mini-trial practice that could lead to additional appeals where the existing record furnishes a rational basis for the Parole Commission's determinations. Nor do we read *Farese* as requiring the Parole Commission to conduct a second or mini-trial to decide control and foreseeability, if the district court has decided these issues, as well as resolving disputed issues of quantities and the role played by the defendant in the conspiracy as leader, follower or the like. As we understand *Farese*, it holds only that the Parole Commission must, by a preponderance of the evidence, determine the prisoner's role in the conspiracy and the issues of control and foreseeability where those issues which should have been determined by the district court, had not been. Where that task has already been accomplished, as it has in *Schiano*, *Farese* requires nothing more.

## IV.

The Parole Commission neither violated its regulations nor our holding in *Farese* with respect to determining Schiano's Offense Severity Rating and his role in the conspiracy. It did not, however, comply with 28 C.F.R. § 2.55(a) when it failed to furnish Schiano with the Paskas file either in gross or in summary.

We will therefore vacate the judgment of the district court denying Schiano's petition for a writ of habeas corpus, and remand this case to the district court, which in turn is directed to return the case to the Parole Commission for rehearing in compliance with the procedures of 28 C.F.R. § 2.55, consistent with the foregoing opinion. *See Anderson v. United States Parole Comm'n,* 793 F.2d 1136 (9th Cir.1986).