

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-15-1998

# Gambino v. Morris

Precedential or Non-Precedential:

Docket 96-5299

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Gambino v. Morris" (1998). *1998 Decisions.* Paper 12.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/12

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 15, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-5299

ERASMO GAMBINO

        Appellant,

v.

E. W. MORRIS (WARDEN-FCI FAIRTON);
UNITED STATES PAROLE COMMISSIONER

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. Civil No. 95-cv-04559)

ARGUED NOVEMBER 12, 1996

BEFORE: ROTH, LEWIS and McKEE, Circuit Judges.

(Filed January 15, 1998)

        Alan D. Bowman (ARGUED)
        Gateway I, Suite 900
        Newark, NJ 07102

         Attorney for Appellant

          Neil R. Gallagher (ARGUED)
          Office of United States Attorney
          970 Broad Street, Room 502
          Newark, NJ 07102

           Attorney for Appellees

OPINION OF THE COURT

LEWIS, Circuit Judge.

Erasmo Gambino, a federal prisoner, alleges that the
United States Parole Commission improperly denied him
parole. In particular, he claims that the Commission's
conclusion that he was affiliated with an organized crime
family was not supported by any evidence, and that an
organized crime affiliation is not enough, in itself, to deny
parole. Gambino filed a writ of habeas corpus, which the
district court denied. Because we find that the United
States Parole Commission abused its discretion, we will
reverse the judgment and remand for further proceedings.

I.

Erasmo Gambino is currently incarcerated at the Federal
Correctional Institution at Fairton, New Jersey. In 1984, he
was convicted of conspiracy to distribute heroin; two counts
of possession of heroin with intent to distribute; and two
counts of distribution of heroin, all in violation of 21 U.S.C.
SS 841(a)(1) and (b)(1). Gambino was also convicted of use
of a telephone in a conspiracy to distribute and possess
heroin, a felony under 21 U.S.C. S 846, in violation of 21
U.S.C. SS 843(b) and (c). On December 6, 1984, he was
sentenced to a 34-year term of imprisonment and a
$95,000 fine.

Prior to the verdict, Gambino was cited for attempted
escape from the Metropolitan Correctional Center in New
York City. He was later found guilty and given a 30-day
disciplinary segregation as punishment.

All of these offenses occurred between December 1983
and March 1984, before the enactment of the Sentencing

Reform Act of 1984 ("SRA"), Pub. L. No. 98-473, Title II, Oct. 12, 1984, 98 Stat. 1987. The SRA abolished parole, see SRA S 218(a)(5), 98 Stat. 2027, 2031, but only for offenses committed after November 1, 1987. See Sentencing Reform Amendment Act of 1985, Pub. L. No. 99-217, S 4, Dec. 26, 1985, 99 Stat. 1728.[1] Thus, Gambino was entitled to a parole hearing.

On April 20, 1994, the United States Parole Commission conducted a parole hearing and Gambino was denied release.[2] The Hearing Panel assigned Gambino a Category Six Offense Severity Rating because he had been convicted of conspiracy to distribute more than 50 but less than 999 grams of pure heroin. See U.S. Parole Commission Offense Behavior Severity Index, Chapter Nine, Subchapter A, P 901(d), 28 C.F.R. S 2.20 (1995).[3] The Panel assessed his salient factor score as 10 out of 10, with 10 representing the lowest risk of parole violation. See id. (Salient Factor Scoring Manual). The parole guidelines for a prisoner with a salient score of 10 and a Category Six offense severity rating indicate a term of incarceration of 40 to 52 months. See 28 C.F.R. S 2.20(b). The Panel assessed an additional 8 to 16 months for Gambino's attempted escape from secure custody.[4] The resulting aggregate guideline range was 48 to

_____

1. The parole enabling statutes, 18 U.S.C. SS 4201 to 4218 (1997), were repealed pursuant to Pub. L. 98-473, Title II, S 218(a)(5), Oct. 12, 1984, 98 Stat. 2027. Nonetheless, these statutes remain in effect for ten years after Nov. 1, 1987. Pub. L. 101-650, Title III, S 316, Dec. 1, 1990, 104 Stat. 5115. For the sake of brevity, the subsequent history of the parole statutes will be hereafter omitted.

2. To avoid later confusion when citing early cases regarding parole, we note that the Parole Commission is the successor to the Parole Board. Campbell v. United States Parole Commission, 704 F.2d 106, 111 (3d Cir. 1983); Pub. L. No. 94-233, S 2, Mar. 15, 1996, 90 Stat. 219.

3. The Commission does not indicate which edition of its regulations it relied upon, although it is clearly a recent one. The district court relied on the 1995 edition, as do we.

4. The Commission's Notices of Action do not indicate under which provision this penalty was assessed. The district court stated that it was assessed pursuant to 28 C.F.R. S 2.36(a)(23)(1)(A). There is no such section, but it appears that the district court intended to indicate 28 C.F.R. S 2.36(a)(2)(i)(A). However, on its face, this section does not apply

68 months.[5] However, 18 U.S.C. S 4205(a) (1997) requires that Gambino remain incarcerated for at least 10 years prior to being eligible for parole.[6] At the time of the April 20, 1994 hearing, Gambino had served approximately 119 months. Nevertheless, the Panel recommended that he remain incarcerated until the expiration of his sentence, solely because Gambino has been identified as a member of an organized crime family.

The Panel also recommended that the case be referred for "original jurisdiction."[7] Government's Supplemental

_____

to Gambino's attempted escape because it only applies "to the sanctioning of disciplinary infractions or new criminal behavior committed by a prisoner subsequent to the commencement of his sentence." Id. S 2.36(a). Gambino attempted to escape prior to the verdict and thus prior to the commencement of his sentence. Moreover, he was given a 30-day disciplinary segregation for this offense after he was found guilty.

Because Gambino has not raised this issue and because his mandatory minimum sentence exceeds the guideline range with or without the additional 8 to 16 months, we need not decide if this increase in the guideline range was proper.

5. The district court stated that the guideline range was 48 to 78 months. This is incorrect and appears to be a typographical error. Because both figures are below the applicable statutory mandatory minimum sentence, the disparity has no effect on our analysis.

6. 18 U.S.C. S 4205(a) (1997) provides that "[w]henever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law."

7. The district court stated that this case was referred for "original jurisdiction" consideration pursuant to 28 C.F.R.S 2.17. Gambino v. Morris, slip op. at 4, No. 95-CV 4559 (D.N.J. Apr. 11, 1996). However, the Regional Commissioner's May 13, 1994 Notice of Action indicates that the case was referred for further review pursuant to 28 C.F.R. S 2.24(a). S.A. at 17. Subsection 2.24(a), entitled "Review of Panel Recommendations by the Regional Commissioner," provides that

  [a] Regional Commissioner may review the recommendation of any
  examiner panel and refer this recommendation, prior to written
  notification to the prisoner with his recommendation and vote to
the

4

Appendix ("S.A.") at 16. On June 27, 1994, the Commission rendered an "original jurisdiction" decision by Notice of Action, determining that Gambino would serve until the expiration of his sentence. Id. at 18. The Commission informed Gambino that a decision to go outside the guidelines was warranted because Gambino was

> a more serious risk than indicated by [his] salient factor score in that [he has] been identified by the government as a member of an organized crime family

_____

> National Commissioners for consideration and any action deemed appropriate . . . . The Regional Commissioner and each National Commissioner shall have one vote and decisions will be based upon the concurrence of two votes.

(Emphasis added.) The section entitled "Original Jurisdiction cases" provides that

> [f]ollowing any hearing conducted pursuant to these rules, a Regional Commissioner may designate certain cases for decision by a quorum of Commissioners as described below, as original jurisdiction cases . . . . Decisions shall be based on the concurrence
> of three votes with the appropriate Regional Commissioner and each National Commissioner having one vote.

28 C.F.R. S 2.17(a) (emphasis added).

The National Commission stated in its Dec. 7, 1994 Notice of Action that it had "original jurisdiction" pursuant to 28 C.F.R. SS 2.17(b)(2) and (b)(4). S.A. at 19. Not only is this inconsistent with the Regional Commissioner's Notice of Action, it is also facially incorrect. Subsection (b)(4) only applies to "[p]risoners sentenced to a maximum term of forty five years (or more) or prisoners serving life sentences." Because Gambino is only serving a sentence of 34 years, this subsection does not apply.

Subsection (b)(2)(ii) would apply, however, if the case had been referred pursuant to section 2.17. See 28 C.F.R. S 2.17(b)(2)(ii) (Regional Commissioner may designate a case as "original jurisdiction" when a prisoner's offense "was part of a large-scale criminal conspiracy or a continuing criminal enterprise.").

Notwithstanding these procedural irregularities, we need not decide whether Gambino was prejudiced by them because of the result we reach in this case. We note them only to ensure that they are not repeated on remand.

5

and as evidenced by the body of an execution murder victim found in the trunk of [his] automobile on November 15, 1982.

Id. The Notice of Action concluded that "[a] decision above the guidelines is mandated in that [Gambino has] a minimum sentence which exceeds the guideline range." Id. The body referred to in the Notice of Action was that of Pietro Inzerillo. Inzerillo was Gambino's cousin, and the two men jointly owned a pizzeria. Gambino claims, and the government does not dispute, that he was never a suspect in this slaying.

Gambino appealed to the Commission's National Appeals Board, which affirmed the Commission's decision on December 7, 1994, by Notice of Action. Id. at 19. The Appeals Board stated that

> [i]n response to [Gambino's] claim that the reasons provided to exceed the guidelines are not a part of the offense of conviction and therefore should not be relied upon is without merit. The Commission may consider available information to determine an appropriate sanction for the total offense behavior. [His] claim that the information used is flawed does not persuade the Commission to change the decision.

Id.

In summary, the parole guidelines indicated that Gambino should serve a term of 48 to 68 months. However, Gambino was not eligible for parole until he served a minimum sentence of 120 months. He had a parole hearing after serving approximately 120 months and was denied parole. The Commission requires that he serve until the expiration of his 34-year sentence.

If Gambino remains a model prisoner, he will be released after completing two-thirds of his sentence, a period of approximately 272 months. 18 U.S.C. S 4206(d) (1997).8

_____

8. 18 U.S.C. S 4206(d) (1997) provides:

> Any prisoner serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision

6

However, if he seriously or frequently violates prison rules, he will serve out his full term of 408 months. See id. These calculations exclude any possible reduction for good time, pursuant to 18 U.S.C. S 4161 et seq. (1997) (repealed by Pub. L. 98-473, Title II, S 218(a), Oct. 12, 1984, 98 Stat. 2027) (repeal effective Nov. 1, 1987, and applicable only to offenses committed after it took effect).

Gambino petitioned the district court for a writ of habeas corpus, pursuant to 28 U.S.C. S 2241. The district court denied the writ.

The district court had jurisdiction pursuant to 28 U.S.C. S 1331. We have jurisdiction pursuant to 28 U.S.C. S 1291.

II.

Our role in reviewing decisions by the Parole Commission on application for a writ of habeas corpus is limited. The appropriate standard of review of the Commission's findings of fact "is not whether the [Commission's decision] is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons." Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976). See also 28 C.F.R. S 2.18 ("The granting of parole to an eligible prisoner rests in the discretion of the United States Parole Commission."). Moreover, we must ensure that the Commission "has followed criteria appropriate, rational and consistent" with its enabling statutes and that its "decision is not arbitrary and capricious, nor based on impermissible considerations." Id. at 690.

_____

        of law, shall be released on parole after having served two-thirds of
        each consecutive term or terms, or after serving thirty years of each
        consecutive term or terms of more than forty-five years including
        any life term, whichever is earlier. Provided, however, that the
        Commission shall not release such prisoner if it determines that he
        has seriously or frequently violated institution rules and regulations
        or that there is a reasonable probability that he will commit any
        Federal, State or local crime.

(Emphasis in original.)

7

Although the Commission must, in the first instance, use the parole guidelines in determining the release of a prisoner, 18 U.S.C. S 4206(a) (1997), it is not limited by those regulations. 18 U.S.C. S 4206(c)(1997).9 The Commission is authorized to "deny release on parole notwithstanding the guidelines . . . if it determines there is good cause for so doing . . . ." Id. The legislative history of that statute indicates the definition of good cause cannot be precise " `because [good cause] must be broad enough to cover many circumstances.' " Iuteri v. Nardoza, 732 F.2d 32, 36-37 (2d Cir. 1984) (quoting H.R. Rep. No. 838, 94th Cong., 2d Sess. 27, reprinted in 1976 U.S. Code Cong. & Admin. News 335, 351, 359). Nonetheless, it is not so broad as to evade any definition. "Good cause" may include consideration of such factors as whether " `the prisoner was involved in an offense with an unusual degree of sophistication or planning or has a lengthy prior record, or was part of a large scale conspiracy or continuing criminal enterprise.' " Romano v. Baer, 805 F.2d 268, 270 (7th Cir. 1986) (quoting H.R. Conf.Rep. No. 94-838, 94th Cong., 2d Sess. 27, reprinted in 1976 U.S. Code Cong. & Admin. News 335, 351, 359). Moreover, "good cause" means "substantial reason and includes only those grounds put forward by the Commission in good faith and which are not arbitrary, irrational, unreasonable, irrelevant or capricious." Harris v. Martin, 792 F.2d 52, 55 (3d Cir. 1986) (citing H.R. Conf.Rep. No. 94-838, 94th Cong., 2d Sess. 27, reprinted in 1976 U.S. Code Cong. & Admin. News 335, 351, 359).

In reaching its decision to grant or deny parole, the Commission may consider a broad range of sources, including presentence investigation reports and "such additional relevant information concerning the prisoner . . . as may be reasonably available." 18 U.S.C. S 4207 (1997).

_____

9. 18 U.S.C. S 4206(a) (1997) provides that a prisoner may be released "pursuant to guidelines promulgated by the Commission . . . ."; see also 28 C.F.R. S 2.20(b), (c) ("These guidelines indicate the customary range of time to be served before release for various combinations of offense (severity) and offender (parole prognosis) characteristics . . . . These time
ranges are merely guidelines. When the circumstances warrant, decisions outside of the guidelines (either above or below) may be rendered.").

The Commission must resolve disputes with respect to information presented by "a preponderance of the evidence standard." 28 C.F.R. S 2.19(c).

On appeal, Gambino argues that: (1) none of the information relied upon by the Commission is rationally connected to the Commission's finding that he was a member of an organized crime family; and (2) there was not "good cause" to place his sentence outside the sentencing guidelines.10

A.

Gambino contends that the Commission had no evidence before it which rationally connects him to the Gambino family of La Cosa Nostra. We may inquire as to "whether there is a rational basis in the record for the Board's conclusions embodied in its statement of reasons." Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976); see United States ex rel. Farese v. Luther, 953 F.2d 49, 53 (3d Cir. 1992). While we may not weigh the evidence, we must be certain that at least some of it is rationally connected to the Commission's finding.

The government argues that the Commission relied on four facts that support its finding that Gambino is a member of a crime family: (1) a Pennsylvania Crime Commission report indicating that Gambino is connected to the Gambino family of La Cosa Nostra; (2) the discovery of Inzerillo's body in the trunk of Gambino's car; (3) a New

_____

10. At times, Gambino appears to be arguing that his due process rights under the Fifth Amendment have been violated as well. Because of the result that we reach here, we need not address this constitutional claim. See Erie Telecommunications, Inc. v. City of Erie, Pa., 853 F.2d 1084, 1093 (3d Cir. 1988) ("a court faced with both constitutional and nonconstitutional claims must address the nonconstitutional claims first, if doing so will enable the court to avoid a constitutional confrontation.").

Gambino raised a number of additional arguments in his "Pro Se Reply Brief." We will "not consider arguments raised on appeal for the first time in a reply brief." United States v. Boggi, 74 F.3d 470, 478 (3d Cir. 1996).

9

Jersey state police report identifying Gambino as a member of the Gambino family of La Cosa Nostra; and (4) a reliable, but unnamed, informant who identified Gambino as a member of the Gambino family of La Cosa Nostra.11

The government asserts that the Commission properly found that the Pennsylvania Crime Commission Report was evidence that Erasmo Gambino was a member of the Gambino family of La Cosa Nostra. But the Pennsylvania Crime Commission Report does not say what either the government or the Commission suggest. The sole reference to Erasmo Gambino in the report states that he is married to the sister of Rosario Gambino (his cousin), who, the report alleges, is a member of La Cosa Nostra.12 This attenuated familial tie does not, indeed cannot, in and of itself, provide a rational basis for finding that Gambino participated in organized crime. Thus, the Commission erred in concluding that this report stated that Gambino was affiliated with La Cosa Nostra, and accordingly, it is an invalid basis for the Commission's decision to deny parole. See Campbell v. United States Parole Comm'n, 704 F.2d 106, 109 (3d Cir. 1983) ("[t]he Commission may not base its judgment as to parole on an inaccurate factual predicate.").

For the government to assert that this reference constitutes evidence proving that Gambino is a member of

---

11. Gambino argues that the Panel only considered the Pennsylvania Crime Commission Report and the fact that Inzerillo's body was found in his car. The Initial Hearing Summary does, in fact, only rely on those two items. Plaintiff 's Appendix ("P.A.") at 7. The Pre-Hearing Assessment relies on those two items and one other for its conclusion. P.A. at 5. The Assessment mentions that the New Jersey State Police had identified Gambino as a member of the Gambino family of La Cosa Nostra. However, nowhere does this Assessment explicitly mention that it relied on information provided by an informant.

Because we find that the information provided by that informant is unreliable, we need not decide whether Gambino was further prejudiced by the failure to mention the reliance on the informant before and during the parole hearing. See Misasi v. United States Parole Commission, 835 F.2d 754 (10th Cir. 1987) (only weighing evidence presented at initial parole hearing).

12. The entire report is not part of the record before us, but the government does not dispute this characterization of it.

10

the Gambino family of La Cosa Nostra is, to say the least, a troubling exercise in conjecture. To rely upon the fact that Gambino is married to the sister of someone who is allegedly affiliated with the mafia as evidence that he, too, is a member of the mafia, is to adopt a rule of guilt by association. This would be impermissible even if Gambino were the son, brother or father of a confirmed member of an organized crime family. But Gambino's wife is not even that. The record in this case does not suggest that she is a mafiosa, only that she is related to mafiosos. We cannot understand how the fact that Gambino is related to someone who is related to a mafioso somehow makes him one as well. Nor does the fact that he is a blood relative of the Gambino family make him an ex officio member of the Gambino "family" of La Cosa Nostra.

The discovery of Inzerillo's corpse in the trunk of Gambino's car, also does not link Gambino to La Cosa Nostra. At best, it suggests that Inzerillo, Gambino's cousin and business partner, was involved with, or perhaps the victim of, organized crime. But the record indicates-- and the government does not dispute -- that Gambino was never a suspect in the homicide investigation, and fully cooperated with it. This is a very important point. The discovery of a body in the trunk of a car -- particularly a so-called "execution murder victim," as the Commission described Inzerillo -- carries with it an undeniable graphic impact. It is almost natural to assume initially that the car's owner was not only involved in the murder, but in other unsavory activity as well. While we in no way mean to diminish the magnitude of this crime, we cannot see how, after investigators had determined that Gambino was not involved with that killing, the Commission can consider his proximity to it as a basis for the denial of parole. Under the particular circumstances of this case, we cannot hold that this evidence provides a "rational basis . .. for the Board's conclusion[ ] embodied in its statement of reasons." Zannino, 531 F.2d at 690.

With regard to the New Jersey State Police Report, we begin by noting that evidence of affiliation with a crime family may be particularly amorphous in a case like this, in which confusions caused by appellation and genealogy

11

might interfere with the accurate assessment of Erasmo Gambino's criminal history.

The New Jersey State Police report's conclusion that Gambino is linked to organized crime is, to say the least, vague. Although the parties have not included a copy of the New Jersey State Police report in the record, the Commission apparently relied upon a reference to this report in the Government's Sentencing Memorandum. Appellee's Supplemental Appendix at 54. The Sentencing Memorandum indicates only that Gambino "has been identified by the New Jersey State Police . . . as a member of the Gambino family of La Cosa Nostra." Id. at 76. But we require evidence intended to establish a defendant's ties to organized crime to be more reliable than a bald assertion from an unverified source. See United States v. Cammisano, 917 F.2d 1057, 1061 (8th Cir. 1990) (reliable information needed to justify upward departure for involvement with organized crime under Sentencing Guidelines); see also Cardarapoli v. Norton, 523 F.2d 990, 997 (2d Cir. 1975) (noting that government often has no basis for its conclusions that inmates "played a significant role in a criminal organization"); Coralluzzo v. New York State Parole Bd., 420 F. Supp. 592, 598 (W.D.N.Y. 1976), aff'd, 566 F.2d 375 (2d Cir. 1977) (noting that "serious errors are often made by the Government in determining that an inmate has links with organized crime"); Mascolo v. Norton, 405 F. Supp. 523, 524 (D. Conn. 1975) ("This is another in a series of cases which disclose the arbitrary classification of an inmate as a `member of organized crime' or`Special Offender' by federal prison officials without a rational basis in fact and without affording the inmate any procedural due process protections."); Catalano v. United States, 383 F. Supp. 346, 350 (D. Conn. 1974) (Bureau of Prisons' imposition of `organized crime' status must be done "in a rational and non-discriminatory manner."); Masiello v. Norton, 364 F. Supp. 1133, 1136 (D. Conn. 1973) (finding no basis in fact for parole board to conclude that defendant should be given organized crime designation, as confidential presentence report was "replete with hearsay, inferences, and conclusions concerning alleged connections between [the defendant's] family and organized crime").

12

The hearsay allegations of the "reliable, unnamed informant" are similarly flawed. While it is true that the Commission can consider hearsay, Campbell, 704 F.2d at 109-10, this allegation, in the context of this particular case, is especially suspect. The appellant's name itself is sufficiently evocative to question the government's characterization of the informant's allegation that Erasmo Gambino is a member of the Gambino family of La Cosa Nostra.[13] We have noted above that the government has mischaracterized the contents of the Pennsylvania Crime Commission Report, most likely as a result of the appellant's surname and familial ties. We are similarly concerned with the government's characterization of the informant's allegation: we were not provided with the underlying report from which the allegation is derived. Moreover, Gambino has not had the opportunity to challenge the veracity of the informant.

To protect against arbitrary action, the government should have good cause for the non-disclosure of an anonymous informant's identity, and sufficient corroboration of the testimony. Cf. United States v. Fatico, 579 F.2d 707 (2d Cir. 1978) (subsequent history omitted) (at sentencing, district court can consider hearsay testimony of unidentified informant regarding defendants' involvement in organized crime as long as there is good cause for non-disclosure and sufficient corroboration). The government's summary of the unnamed informant's allegation is neither sufficiently reliable nor sufficiently corroborated to support the Commission's finding. See id. at 712-13 ("a significant possibility of misinformation" may justify the sentencing court in requiring "the Government to verify the information."); United States v. Borello, 766 F.2d 46, 60 n.23 (2d Cir. 1985); see also Misasi v. United States Parole Comm'n, 835 F.2d 754, 757-58 (10th Cir. 1987) (being described by unnamed local and federal authorities

_____

13. The record suggests that the Commission relied upon one reference in the Government's Sentencing Memorandum to the informant's allegation. The Sentencing Memorandum states that a "reliable informant . . . has been told by Erasmo Gambino that he is a member of the Gambino family of La Cosa Nostra." Appellee's Supplemental Appendix at 77.

13

as largest distributor of illegal prescription drugs in report by the United States Attorney is not a "specific fact" for the purposes of the Commission's own procedures); cf. Zannino, 531 F.2d at 691–92 (Parole Board may consider hearsay regarding membership in crime organization that was presented as sworn testimony during the course of a formal Congressional hearing where defendant and counsel had the opportunity to rebut it). Here, the corroboration of the allegation consists of the New Jersey State Police Report we discussed earlier, and no good cause has been shown for the non-disclosure of the informant's identity. The government's unilateral, untested assertion that the informant is reliable is not sufficient to overcome these shortcomings.14

The Commission relied upon the above evidence to require that Gambino serve until the expiration of his sentence, adding anything from 12 to 24 years to the minimum period of incarceration required by statute. Yet, some of the evidence relied upon by the Commission is altogether speculative as to Erasmo Gambino's connection to the Gambino family of La Cosa Nostra. Other evidence only tenuously demonstrates the connection. The remainder is hearsay from unnamed sources. It can hardly be said that this evidence, in itself, provides a "rational basis in the record for the Board's conclusions embodied in its statement of reasons," Zannino v. Arnold, 531 F.2d at 691, and the denial of parole is arbitrary and capricious as a result. See id. at 689; see also Misasi, 835 F.2d at 757–58 (reliance on one factually incorrect reason and one non-specific reason does not constitute "rational basis" for parole date outside of guidelines).

In the context of a sentencing hearing, we have warned of situations where a substantial upward departure in a sentence becomes " `a tail which wags the dog of the substantive offense.' " United States v. Kikumura, 918 F.2d 1084, 1101 (3d Cir. 1990) (quoting McMillan v.

_____

14. As Judge Roth observes in her concurring opinion, the evidentiary problem raised by the informant testimony is exacerbated by the fact that Gambino had no opportunity to present his own version of the facts, or to rebut or challenge the informant's alleged statements.

Pennsylvania, 477 U.S. 79, 88 (1986)). In Kikumura we held that a greater evidentiary burden was required when the magnitude of a contemplated departure was extreme. Kikumura, 918 F.2d at 1101. Although the Parole Commission has greater discretion than a sentencing judge, we are concerned that it was willing to add one or two decades to Gambino's prison term based on the quality of evidence discussed above. A rational penal system must have some concern for the probable accuracy of the evidence it uses to make its decisions. See United States v. Perri, 513 F.2d 572, 575 (9th Cir. 1975).15

B.

We consider next Gambino's contention that the Commission's failure to demonstrate "good cause" warrants his immediate release. The government argues that a remand to the Parole Commission is the appropriate remedy if "good cause" is found lacking. We agree.

We have ordered a prisoner released on parole only under unique circumstances, which are not present in this case. Only "[w]hen a district court remands a case to the Parole Board for failure to adequately explain its decision and, on remand, the Commission again declines to articulate a basis for the identical conclusion, [may] a district court . . . permanently decide this issue on the record before it." Bridge v. United States Parole Comm'n, 981 F.2d 97, 106 (3d Cir. 1992). See also Billiteri v. United States Bd. of Parole, 541 F.2d 938, 944 (2d Cir. 1976) (in the case of non-compliance by the Parole Board, a "court can grant the writ of habeas corpus and order the prisoner discharged from custody.").

_____

15. Gambino also argues that affiliation with organized crime is an inadequate basis for denying parole, at least where an inmate's crime of conviction does not indicate organized criminal activity. We can envision circumstances in which an inmate has participated in organized criminal activity, yet that participation nonetheless does not indicate a likelihood
of future criminal activity (for instance, where a member of a crime family renounces his allegiance or becomes a government informant). This argument, therefore, is not to be dismissed lightly. Because we have determined that Gambino is entitled to relief on other grounds, however, we need not decide this issue.

For instance, in Marshall v. Lansing, 839 F.2d 933 (3d Cir. 1988), the district court remanded a habeas proceeding to the Commission with instructions to clearly explain the reasoning for its offense categorization. Notwithstanding the court order, the Commission reassigned the same offense severity level without providing an adequate explanation. In light of the protracted history of the case and the district court's impression that the Commission intentionally had evaded its mandate, the district court ordered the Commission to reassess the prisoner's parole status under a specific offenses severity category. We affirmed this final relief. We also have ordered the release of a prisoner who was denied parole in part because of his race, where a remand would have consumed several months, by which time his sentence would have expired. See Block v. Potter, 631 F.2d 233 (3d Cir. 1980).

In the absence of such unusual circumstances, however, it is clear that a remand is the appropriate remedy. See e.g., Zannino v. Arnold, 531 F.2d 687, 692 (3d Cir. 1976); Billiteri, 541 F.2d at 938. In this case, although we have determined that the Commission's basis for exceeding the guideline lacks "good cause," it is conceivable that "good cause" may be demonstrated at a new hearing. Because we find no unusual circumstances, like those presented in Bridge, Marshall and Block, we will remand for further proceedings.

III.

For the reasons discussed above, we reverse the judgment and remand the case to the district court with directions that it vacate its judgment and order. Furthermore, the district court should remand the case to the Parole Commission with directions that it conduct another Panel hearing within 60 days, and in a manner consistent with this opinion. Since Gambino has already served many months more than prescribed by his guideline range and his mandatory minimum sentence, additional administrative proceedings should be conducted expeditiously.

16

ROTH, Circuit Judge, concurring.

The Parole Commission denied parole to Erasmo Gambino on the ground that he was identified as a member of an organized crime family. The majority found that in so holding, the Parole Commission abused its discretion. The majority determined that the Commission's conclusion was not supported by sufficient evidence, indeed that there was no rational basis to support the Commission's conclusion. I would, however, not reach the merits of the Parole Commission's decision, as the majority did, because I find that two procedural errors occurred prior to any Commission decision which errors prejudiced Gambino's right to a fair parole hearing. For this reason, I concur in the judgment of the Court as I, too, would reverse the judgment of the district court and remand for a new parole hearing.

Congress has charged the Parole Commission with conducting parole hearings and thereafter determining whether a given prisoner is eligible for parole. 18 U.S.C. S 4201 et seq. In order to ensure that a prisoner's due process rights are respected throughout the parole determination, Congress both (a) codified certain procedural statutes to guide the Commission, e.g. 18 U.S.C. S 4206, and (b) authorized the Commission to promulgate rules and regulations to administer parole eligibility determinations in a fair manner. 18 U.S.C. S 4203(a)(1). The Commission, in response, established 28 C.F.R. S 2 et seq. The Parole Commission's handling of the Gambino parole hearing demonstrates a disregard of these rules and regulations, the sum total of which is a denial of Gambino's due process rights.

First, Gambino did not receive an opportunity at his initial parole hearing to rebut allegations of organized crime until after the hearing examiner had ruled on Gambino's parole eligibility. This action on the part of the Parole Commission constituted a violation of 28 C.F.R. S 2.531 by

_____

1. A prisoner . . . serving a term . . . of 5 years or longer shall be released on parole after completion of two-thirds of each consecutive term . . . unless pursuant to a hearing under this

17

failing to provide a hearing complying with 28 C.F.R. S 2.19(c).2 Second, after the Hearing, the Commission may deny parole but it must explain with particularity the reason for the denial and include a summary of the information relied on in making this determination. Gambino was denied proper notice of the factual allegations supporting the Parole Commission's determination that he was a member of La Cosa Nostra. The Commission violated 18 U.S.C. S 4206(c)3 when it did not inform Gambino of an essential piece of information upon which it relied when it determined that Gambino was a member of La Cosa Nostra.

Either of the these two errors is serious enough to warrant a reversal of the district court and a remand to the Parole Commission for a new parole hearing. Patterson v. Gunnell, 753 F.2d 253 (2d Cir. 1985) (remanding for a new parole hearing upon finding of Commission's failure to comply with S 2.19(c)'s notice provision); Marshall v. Lansing 839 F.2d 933, 943 (recognizing that setting aside the Commission's action and remanding for a new hearing is appropriate where agency fails to comply with its own regulations) (3d Cir. 1988). I address each of these errors in turn.

_____

      section, the Commission determines that there is a reasonable probability that the prisoner will commit any Federal, State or local crime or that the prisoner has frequently or seriously violated the rules of the institution in which he is confined.

28 C.F.R. S 2.53(a).

2.     The Commission may take into account any substantial information available to it . . . and any aggravating or mitigating circumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond.

28 C.F.R. S 2.19(c).

3. 18 U.S.C. S 4206 (c) provides in part:

     The Commission may grant or deny release on parole .. . if it determines there is good cause for so doing: Provided, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including summary of the information relied upon.

I. The Parole Hearing

The Parole Commission held a parole hearing for Erasmo
Gambino on April 20, 1994. At this hearing the Hearing
Examiner took into account information regarding
Gambino's alleged affiliation with La Cosa Nostra.4
Specifically the Examiner relied on a Pennsylvania Crime
Commission Report and a Government Sentencing
Memorandum for Gambino's co-defendant Rosario
Gambino, Gambino Pro Se Reply Br. at 11-13; Parole
Hearing Uncertified Transcript ("Hearing Transcript") at 13;
Petitioner's Supplemental Appendix ("PSA") at 14.

There is no question that the Commission is entitled to
consider the contents of these documents, but the
Commission must provide a prisoner with notice that the
information will be used as evidence to deny him parole
and the prisoner must have an opportunity to respond to
the evidence in the documents. S 2.19(c) ("[t]he Commission
may take into account any substantial information
available to it . . . and any aggravating and mitigating
circumstances, provided the prisoner is apprised of the
information and afforded an opportunity to respond.");
Patterson v. Gunnell, 753 F.2d 253, 255 (2d Cir. 1985)
(holding that where the National Appeals Board had
information unknown to prisoner and on which it relied,
prisoner's case had to be returned for a new parole hearing
so that prisoner would not be "deprive[d] .. . of a
procedural protection guaranteed by the Commission's
regulations.").

Furthermore, the opportunity to respond to the evidence
in the documents must take place before the Examiner
proffers his recommendation. Section 2.19(c) explains that

_____

4. Gambino with his pro se brief in this Court presented a copy of the
uncertified transcript of the parole hearing. This record was not before
the district court. Thus, it is not properly part of the record before us.
Nevertheless, pursuant to Fed. R. App. P. 10, I will consider it to
substantiate factual allegations made by Gambino as to the events that
took place at the Hearing. This is appropriate particularly where the
Parole Commission has never challenged the accuracy of the transcript
or of Gambino's version of what transpired at the parole hearing as
argued in his pro se brief.

19

after the prisoner has had an opportunity to respond to the evidence, if there exists a factual dispute, the Commission shall resolve it according to the preponderance of evidence. It is inconceivable that Congress intended this fact-finding to take place after a Hearing Examiner had made his determination to grant or deny parole.

The Commission did not comply with S 2.19(c) here.[5] After an extensive discussion about Gambino's role in the offense of conviction and without mention of any of the evidence connecting Gambino to La Cosa Nostra, the ultimate basis for the denial of parole, the Examiner adjourned the hearing. Gambino Pro Se Reply Br. at 12; Hearing Transcript at 11; PSA at 12. When the Examiner called Gambino back into the room, the Examiner read his recommendation that Gambino be denied parole. Id. The Examiner explained that the reason for the denial was that Gambino had been "identified by the government as being a member of organized crime." Id. The Examiner further explained that the bases for his conclusion were the Pennsylvania Crime Commission Report and the Government's Sentencing Memorandum.

The explanation for the denial of parole (at the conclusion of the hearing) was the first mention to Gambino of this evidence. Gambino was not given notice that this evidence would be used against him and he was not given an opportunity to respond prior to the Examiner's recommendation. The fact that the issue was discussed

_____

5. Gambino described the procedure in the following manner:

> Gambino and his attorney were instructed by the parole examiner to leave the hearing room. After being called back by the parole examiner, Gambino was informed of the parole examiner's recommendation to serve to the expiration of his 34 year sentence. The parole examiner then mentioned for the first time the Pennsylvania Crime Commission report [linking him to La Cosa Nostra]. A single question was posed to Gambino, and only after counsel suggested to the parole examiner to ask Gambino if he was a member of organized crime. The superficial organized crime question came only after the parole examiner made his decision to continue Gambino to expiration of his sentence.

Gambino Pro Se Reply Br., at 12-13.

20

after the Examiner made his decision is not sufficient to prevent a violation of 28 U.S.C. S 2.19(c). As the Commissioner asserts, "the record reveal[s] that appellant's counsel spoke to [the issue of Gambino's organized crime ties] in the hearing" reiterating the district court holding. Parole Comm'n Reply Br. at 5. The consideration of the evidence must, however, take place before the Hearing Examiner has decided what the outcome will be and has made his recommendation. An opportunity to develop one's position on the merits, i.e., deny one's involvement with organized crime, after the Examiner has made up his mind and stated his recommendation, is not sufficient "opportunity to be heard."

Even more troubling was the Examiner's apparent reliance on a New Jersey State Police Report conclusion that Gambino was involved in organized crime. This report was never mentioned at the hearing. There is passing reference to it in the Examiner's Initial Hearing Summary as evidence providing one of the bases for the conclusion that Gambino was involved in organized crime. However, the Examiner made no mention at all of the New Jersey report during the hearing -- either before or after he had made his decision.

Following the hearing, Gambino appealed the denial of parole to the National Appeals Board. The fact that he may have had an opportunity to challenge the evidence on appeal is not sufficient.6 The procedural posture on appeal

_____

6. I recognize that Kell v. United States Parole Commission, 26 F.3d 1016, 1022 (10th Cir. 1994), accepted the contrary proposition. There the Tenth Circuit held that, in the context of a parole revocation hearing,
a prisoner was sufficiently "apprised of the information and afforded an opportunity to respond" within the meaning of 28 C.F.R. S 2.19(c), when he, being denied information at the parole revocation hearing, was afforded an opportunity to respond via pursuit of the administrative review process. Kell relied on Patterson v. Gunnell, 753 F.2d 253, 255-56 (2d. Cir. 1985), where the Second Circuit held that S 2.19(c) was not satisfied where petitioner had no opportunity to respond when the National Appeals Board relied on aggravating circumstances of which petitioner had not been informed. However, the Second Circuit never passed on the issue before us. Furthermore, the Tenth Circuit in Kell was ruling in the context of a parole revocation hearing, not an initial parole hearing where the due process liberty interests at issue are different.

21

of a denial of parole is completely different from that of the initial hearing on the merits. First, at the hearing the prisoner can submit live testimony (his own or a witness's); on appeal, the prisoner can only make written presentations. Compare 18 U.S.C. S 4208(e); 28 C.F.R. S 2.19(b)(4)7 with S 2.27(b).8 For example, if a prisoner had an alibi defense for prior uncharged criminal conduct that was being used as the basis for denial of parole, the alibi witness could testify before the Hearing Examiner; he could not before the National Appeals Board. Second, the standard of review of evidence submitted is different at the hearing than it is on appeal. At the hearing, the Examiner makes factual findings on a "preponderance of the evidence" standard; on appeal, the National Appeals Board owes some deference to the findings of the Hearing Examiner. Compare S 2.19(c)9 with S 2.26(e).10Thus, a prisoner, who has an opportunity to be heard only on appeal, must prove not only that his version of the events is true by a preponderance of the evidence, as at a hearing, but also that the hearing examiner, whose decision is owed some deference, was wrong in his preponderance of the evidence determination. This is a higher standard of persuasion. Third, a prisoner has a statutory right to be

---

7. "The Commission will normally consider only verbal and written evidence at hearings." 28 C.F.R. S 2.19(b)(4).

8. "Attorneys, relatives, and other interested parties who wish to submit written information concerning [a prisoner's appeal] should send such information to [the following address] . . . thirty days in advance." 28 C.F.R. S 2.27(b).

9. "If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard." 28 C.F.R. S 2.19(c).

10. Appeals . . . may be based on the following grounds:

    (3) That especially mitigating circumstances (for example, facts
    relating to the severity of the offense or the prisoner's
probability of
    success on parole) justify a different decision;
    (4) That a decision was based on erroneous information, and the
    actual facts justify a different decision.

28 C.F.R. S 2.26(e). It would appear that review of factual determinations by the National Appeals Board is for clear error.

present at his parole hearing; he does not at his appeal. See 18 U.S.C. S 4208(e); 28 C.F.R. S 2.13(a).

For all these reasons, the posture of a case on appeal is not the same as a hearing on the merits. A prisoner's opportunity at the hearing to rebut allegations of fact is a right protected by statute and regulations. His opportunity on appeal to challenge the veracity of facts, already established, cannot make up for the loss of his earlier right to be heard.

Inferential support for this proposition is drawn from the fact that many circuits have held that the Commission may not rely on information undisclosed to the prisoner in determining eligibility for parole even if the information is subsequently made available to prisoners on administrative appeal. See United States ex rel. Schiano v. Luther, 954 F.2d 910, 915 (3d Cir. 1992); Pulver v. Luther, 912 F.2d 894, 896-97 (7th Cir. 1990); Anderson v. United States Parole Comm'n, 793 F.2d 1136, 1137-38 (9th Cir. 1986). See also Liberatore v. Story, 854 F.2d 830, 838 (6th Cir. 1988 (remanding to determine whether late received documents had to be disclosed). These cases all deal with violations of either 18 U.S.C. S 4208(b)(2) or 28 C.F.R. S 2.55 (Commission's obligation to disclose inculpatory information prior to a parole hearing), not of S 2.19(c), the regulation at issue here. However, they recognize the notion that post-hearing access to information does not remedy prior violations.11

_____

11. Gambino argues for the first time on appeal to this Court that he was not provided the requisite disclosure of documents prior to his parole hearing. Title 28 of the Code of Federal Regulations section 2.55(a) instructs that the Parole Commission, at least 60 days prior to an initial parole hearing, must notify each prisoner of "his right to request disclosure of the reports and other documents to be used by the Commission in making its [parole] determination." Gambino argues that he was not provided such notice. Gambino Pro Se Reply Br. at 8. As a result, Gambino did not exercise his right to request disclosure under S 2.55. He claims that as a consequence he was ill-prepared at his parole hearing to refute the evidence of his involvement with La Cosa Nostra. We cannot determine from the record before us whether the Parole Commission violated S 2.55(a) as well.

23

In response to Gambino's argument that the Commission has violated S 2.19(c), the Commission has raised a procedural default issue of waiver. The Commission asserts that Gambino waived his right to appeal the S 2.19(c) issue because he neglected to assert this argument to this Court until his pro se reply brief. Ordinarily, an appellant's failure to raise an issue in a opening brief constitutes abandonment or waiver of that issue. See Republic of the Phillippines v. Westinghouse Electric Corp., 43 F.3d 65, 71 n.5 (3d Cir. 1994) (appellants required to set forth issues and present arguments in favor of those issues in opening brief); Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993). See also Fed. R. App. P. 28(a). The rule serves two related purposes. First, it protects the appellee from the prejudice that results from the court's consideration of a late argument to which the appellee ordinarily cannot issue a written response. Second, it promotes the values of our adversarial system by ensuring that the court has heard adequate argument on a particular issue prior to rendering its decision. See Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1277-78 (10th Cir. 1994); Hebert v. National Academy of Sciences, 974 F.2d 192, 196 (D.C.Cir. 1992). 16 C. Wright, A. Miller, et. al., Federal Practice and Procedure S 3974 n.4 (1996). Despite this rule, however, appellate courts may in their discretion consider issues not properly raised in an opening brief. The D.C. Circuit has stated that it will consider issues raised only in the reply brief – or issues not raised at all – when the error is so"plain" that manifest injustice would otherwise result. See Herbert v. National Academy of Sciences, 974 F.2d 192, 196 (D.C.Cir. 1992). Similarly, the Ninth Circuit also has held that courts may consider an issue improperly raised if failure to do so would create manifest injustice. See United States v. Ullah, 976 F.2d 509, 514 (9th Cir. 1992) (because manifest injustice would result in court's reversal only of codefendant's conviction, court would entertain defendant's argument for reversal despite fact that argument was not raised until reply brief).12

_____

12. The manifest injustice exception is somewhat similar to the "plain error" rule, which is applied in the context of appeals from criminal trials, and allows appellate courts to consider defects at the trial level even when the defendant has failed to lodge an appropriate objection. See Fed. R. Crim. P. 52(b).

24

In addition to preventing manifest injustice, some circuit courts have expressed a willingness to consider an issue not properly presented in an opening brief where the equities favor the court's consideration of the issue or if the appellee is not likely to be prejudiced. See Ullah, 976 F.2d at 514 (Ninth Circuit willing to consider issue raised only in reply brief when government had already addressed the issue in consolidated brief and therefore suffered no prejudice); Curry v. Beatrice Pocahontas Coal Co., 67 F.3d 517, 522 n.8 (4th Cir. 1995).

Under the circumstances of this case, I conclude that it is appropriate to consider the notice issue raised by Gambino in his pro se reply brief. First, the record clearly demonstrates that the Parole Commission never gave Gambino an opportunity to refute the evidence against him at his parole hearing. Were this a trial, this defect might very well rise to the level of "plain error." Manifest injustice would result if we were to penalize Erasmo Gambino for the strategic shortcomings of his attorney. Second, the government was not prejudiced by Gambino's late presentation of the issue in the reply brief because we permitted the Commission to file a surreply brief in response to Gambino's pro se reply. Consequently, the issue was fully addressed by both sides and therefore was subject to the intellectual rigors of the adversarial process. As such, I find the Parole Commission's waiver argument not to be persuasive.

As a remedy for the violation of S 2.19(c), it is clear that "[a] court can set aside agency action that fails to comply with the agency's own regulations at least where the regulations are designed to protect the individual grievant." Marshall v. Lansing, 839 F.2d 933, 943 (3d Cir. 1988).13 Such is the case here. An appropriate disposition is to remand to the Commission to conduct a parole hearing in compliance with its regulations. Patterson v. Gunnell, 753

_____

13. See also United States v. Nixon, 418 U.S. 683, 695–96, 94 S.Ct. 3090, 3101–02 (1974); Frisby v. United States Department of Housing & Urban Development, 755 F.2d 1052, 1055–56 (3d Cir. 1985); D'Iorio v. County of Delaware, 592 F.2d 681, 685 n.2 (3d Cir. 1978); Bluth v. Laird, 435 F.2d 1065, 1071(4th Cir. 1970).

F.2d 253 (2d Cir. 1985) (remanding for a new parole hearing upon finding of Commission's failure to comply with S 2.19(c)'s notice provision).

## II. The Written Notice of Reasons for Denial of Parole

In addition to violating 28 C.F.R. S 2.19(c) by not providing Gambino with notice and an opportunity to respond to the evidence against him, the Commission exacerbated matters by its subsequent failure to provide a summary of the evidence used in determining to deny parole, in violation of 18 U.S.C. S 4206(c) 14 and its concomitant Parole Commission regulation, 28 C.F.R. S 2.13(d).15 16 Gambino had a parole hearing on August 20,

_____

14. The Commission may grant or deny release on parole . . . if it determines there is good cause for so doing: Provided, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.

18 U.S.C. S 4206(c).

15. In accordance with 18 U.S.C. 4206 the reasons for establishment of a release date shall include . . . the specific factors and information relied upon for any decision outside the range indicated by the guidelines.

28 C.F.R. S 2.13(d).

16. In addition, it is quite possible that the Commission's behavior violated Gambino's constitutional due process rights. Several courts of appeal have found that the federal parole statute creates a substantial expectation of parole that is protected by the due process clause. See Kindred v. Spears, 894 F.2d 1477, 1481 (5th Cir. 1990); Solomon v. Elsea, 676 F.2d 282, 285 (7th Cir. 1982); Evans v. Dillahunty, 662 F.2d 522, 526 (8th Cir. 1981). While the amount of process owed a parolee by the Constitution is not clear, see, e.g., Evans, 662 F.2d at 526, the Parole Commission's statutes and regulations bind it to a higher level of procedural protection. See Kindred, 894 F.2d at 1481-82. As a federal agency, the Parole Commission has an obligation to abide by its own regulations and laws. See Marshall v. Lansing, 839 F.2d 933, 941 (3d Cir. 1988). Because I find a violation of federal statute and regulations, the question of whether there was a violation of Gambino's Constitutional due process rights need not be decided. Northwest Airlines, Inc., v. Transport Workers Union Of America, 101 S.Ct. 1571, 1578 n.15 (1981).

1994, pursuant to which he was denied parole. Both federal law and Commission regulations require that the Commission explain the nature of the evidence relied on to deny parole. Section 4206(c) requires that the prisoner be "furnished [with] written notice stating with particularity the reasons for its determination including a summary of the information relied upon." Section 2.13(d) requires that "the reasons . . . [shall include] the specific factors and information relied upon." In an effort to comply with these requirements, the Commission, throughout the administrative appeals process prepared four separate documents purporting to summarize the evidence linking Gambino to La Cosa Nostra. All were inadequate. None of the Pre-Hearing Assessment, Parole Commissioner's Initial Hearing Summary, Regional Commissioner's decision, and National Appeals Board Notice of Action refer to the reliable informant, cited by the government in its sentencing memorandum for co-defendant Rosario Gambino, who linked Erasmo Gambino to La Cosa Nostra.[17]  Thus Gambino was denied any notice of arguably the most forceful evidence linking him to La Cosa Nostra and so was ill-prepared to contest this evidence on appeal. See Nunez-Guardado v. Hadden, 722 F.2d 618, 624 (10th Cir. 1983) (explaining that the purpose of requiring a summary of the evidence is so that prisoner can "fully exercise his right of appeal"). Furthermore, the combination of the failure to confront Gambino with such evidence at the hearing-- the violation of S 2.19(c), coupled with the failure to summarize the evidence post-hearing -- placed Gambino in a particularly difficult position.

The Commission's claim in its response to Gambino's Pro Se Reply Brief that we should reject Gambino's claim because Gambino had access to the government's sentencing memorandum, which was a part of his central

_____

17. In addition, the Parole Commissioner's Initial Hearing Summary fails to mention the discovery of Pietro Inzerillo's body in Gambino's car.
See Petitioner's Appendix, at 6. However, the Parole Commission arguably cured this deficiency after the case was referred for original jurisdiction, since the Regional Commissioner's decision cites the discovery of the body in Gambino's trunk as support for its determination. See Petitioner's Appendix, at 9.

file, see Parole Comm'n Reply Br., at 2, is weak. The mere fact that Gambino may have had access to the sentencing memorandum (and the informant's statements contained therein) is meaningless. Section 4206(c) requires the Commission to provide a summary of the information on which it has relied when it makes a "good cause" determination and denies parole. To construe the requirements of S 4206(c) as anything less than to require the Commission to identify the essential pieces of information that caused it to associate Gambino with organized crime, would be improper. Only with such identification, can Gambino be in a position to challenge this determination on appeal.

In addition, the government argues that Gambino waived the S 4206(c)/S 2.13(d) claim, despite Gambino having raised the issue before the district court, see District Court Op., at 9-10, by not asserting it in his opening appellate brief, i.e., he did not raise it on appeal until he submitted his pro se reply brief. Despite the procedural default, I have considered this claim. I did so for the reasons stated in Section I: a) so as not to create manifest injustice to the defendant and b) since the Commission will not be prejudiced because we permitted it to file a Surreply Brief.

The Commission's argument that Gambino failed to exhaust his administrative remedies by not making this argument before the Parole Commission stumbles at the outset. Gambino could hardly have complained about inadequate notice of inculpatory information before he knew he was being deprived of pertinent information in the first place.

Ordinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. S 2241. See Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996) (prisoner must exhaust administrative remedy prior to challenging disciplinary proceeding in habeas petition); Tatum v. Christiansen, 786 F.2d 959, 964 (9th Cir. 1986). Unlike the rule requiring prisoners to exhaust state remedies, this rule is of judicial and not statutory creation. In either case, exhaustion is not required when the petitioner demonstrates that it is futile. See Rose v. Lundy,

28

455 U.S. 509, 516 n.7, 102 S.Ct. 1198, 1202 (1982) (exhaustion of state remedies not required where futile). Cf. Lyons v. U.S. Marshalls, 840 F.2d 202, 205 (3d Cir. 1988) (in Bivens action, federal prisoners need not exhaust administrative remedies if futile or if actions of agency "clearly and unambiguously violate statutory or constitutional rights").

There is no question that Gambino appealed the Hearing Examiner's denial of parole to the regional and national levels of the Parole Commission. Throughout those appeals, Gambino maintained that the Commission had incorrectly identified him as a member of an organized crime family. At no point did the Commission indicate that it had relied on the "reliable government informant" for its determination that Gambino was a member of La Cosa Nostra. Since the administrative process failed to reveal to Gambino the Commission's reliance on the government informant, that process has proved itself to be futile. As such, the Commission's exhaustion argument must fail.

It is clear that the Commission failed to comply with S 4206(c) or S 2.13(d) by failing to adequately summarize the information it relied on in denying Gambino parole. It is also clear that the district court relied at least partially on this information when it affirmed the Commission's decision. See District Court Op. at 8-9. For these reasons, I would reverse the district court's finding thatS 4206(c) was satisfied and I would join with the majority in remanding for another parole hearing, one which would comply with all applicable law, including SS 4206(c), 2.13(d) and 2.19(c). Patterson v. Gunnell, 753 F.2d 253 (2d Cir. 1985).

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit