**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 16-1026

———————

ROBERT WASHINGTON,
                    Appellant

v.

KEVIN DORAN; BRIAN JAMES; AL SERVELLO, Unit Manager;
MICHAEL MCCLOSKEY; WARDEN PITTSBURGH SCI

———————————————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-13-cv-00277)
District Judge:  Honorable Maureen P. Kelly, Magistrate Judge

———————————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 14, 2017

Before:  GREENAWAY, JR., GREENBERG and ROTH, Circuit Judges

(Opinion filed:  November 21, 2017)

———————

OPINION[*]

———————

PER CURIAM

———————————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Robert Washington, a state prisoner, appeals following a jury trial of his excessive force claims. We will affirm the District Court's judgment.[1]

This trial involved an incident in 2011, when Washington was housed at Pittsburgh State Correctional Institution. On May 24, 2011, he had a verbal confrontation with two correctional officers, Kaas Doran and Michael McCloskey. The officers wrote an incident report that resulted in a misconduct charge against Washington. On the following day, Doran and McCloskey came to Washington's cell to move him to a different cell as a result of the misconduct. They handcuffed Washington behind his back, and attached a leather tether to control his movements. As they were moving down the hallway (there were no cameras in the hallway that they used), Washington allegedly ran into Doran with his shoulder, pushing him into the wire fence that lined the corridor. McCloskey then pulled Washington's feet out from under him, causing him to hit the ground, face down. The officers testified that Washington was kicking and rolling around. Officer James heard a commotion and came to assist, and tried to keep Washington's arms under control. Other officers then responded to a call for assistance.

Washington was helped to his feet and taken to his new cell. He refused medical treatment at first, but later allowed a nurse to examine him and allowed photographs. The nurse's report lists: "2 raised areas rt side of ↑head [with] small superficial open area laceration ↑ posterior head. Approx ½″ (superficial) laceration (superficial) ↑ forehead into hair line approx. 1″." See Dkt. #47-2, at 3.

---

[1] The parties consented to proceedings before a magistrate judge. Our references to the "District Court" refer here to the Magistrate Judge's decisions.

Washington had a different version of the events. He said that when Doran and McCloskey came to his cell, they told him to pack up but refused to say why or where he was going. He also claimed that he had not yet received the misconduct report. Washington testified that Doran said he knew "how to deal with a wise guy," and shortly after called him a "black illiterate nigger." He said that as they were walking, Doran hit him on the back of the head with some metal object, causing him to begin to lose his balance, and then McCloskey pulled his legs out from under him. He testified that he was not resisting, and that the two officers, and possibly James, were kicking him and hitting him once he was down. Besides the injuries noted above, he also claimed that he had blood clots in both eyes and had migraines from the incident, and that he experienced anxiety and was afraid to leave his cell.

Washington was represented by counsel at trial. Following the unfavorable jury verdict and entry of judgment in favor of the Defendants, Washington filed a "Motion to Withdraw Counsel," which the District Court granted. Washington, proceeding pro se, filed a Notice of Appeal, Dkt. #86, and "Motion for a New Trial," Dkt. #88, stating only:

> (I.) Verdict is against the weight of the evidence.
> (II.) Trial Record were tainted, plain errors of law.
> (III.) Evidence is in Conflict.

The motion was docketed on January 5, 2016, and the District Court denied it on January 7, noting that Washington had "not presented the Court with any support whatsoever for his assertions." Washington filed a brief in support of his motion, which was dated January 3, and which was docketed on January 8. The District Court did not address that brief.

3

Washington elected to proceed pro se on appeal, and the matter is now fully briefed. We first consider the scope of the appeal. Appellees argue that, because Washington failed to file a supported Rule 59(a) motion and failed to appeal the denial of his Rule 59 motion, he has waived any arguments for appeal. We agree that the District Court docket does not reflect that Washington filed a new or amended notice of appeal following the denial of his motion. See Fed. R. App. P. 4(a)(4)(B)(ii) (party intending to challenge order denying new trial motion must file initial notice of appeal or amended notice of appeal after entry of order). But we construe Washington's "Brief in Support of Appellant Motion for a New Trial and Eighth Amendment Claim," dated and filed in this Court on February 5, 2016, as an amended notice of appeal. See Smith v. Barry, 502 U.S. 244, 248-49 (1992) (brief filed within time specified by Fed. R. App. P. 4 may constitute a notice of appeal); Fed. R. App. P. 4(a)(1) (providing 30 days to appeal in civil case where United States is not a party); see also Haines v. Kerner, 404 U.S. 519, 520 (1972) (filings of pro se litigant held to less stringent standards). We thus have jurisdiction to consider the denial of Washington's new trial motion, as well as his appeal from the judgment following the jury's verdict.[2]

We agree, however, with the Appellees' alternative argument, that the jury's verdict was not against the weight of the evidence or the result of improperly admitted

---

[2] Before this matter proceeded to trial, the District Court dismissed claims against officials in their official capacity, and dismissed claims against those who did not have direct involvement in the incident in question. See Dkt. #49. Washington has not contested that decision here. See Kopec v. Tate, 361 F.3d 772, 775 n. 5 (3d Cir. 2004) ("An issue is waived unless a party raises it in its opening brief.").

4

evidence. A district court should grant a new trial motion "only when the great weight of the evidence cuts against the verdict and a miscarriage of justice would result if the verdict were to stand." Leonard v. Stemtech Int'l Inc, 834 F.3d 376, 386 (3d Cir. 2016) (internal quotation marks and alterations eliminated), petition for cert. filed, (Sup. Ct. Jan. 24, 2017) (No. 16-00928). A district court should not "substitute its judgment of the facts and the credibility of the witnesses for that of the jury." Id. (internal quotation marks omitted). Our authority following a jury verdict is similarly narrow. We review a district court's denial of a new trial motion for abuse of discretion, and we will not overturn a jury verdict "unless the record is critically deficient of that quantum of evidence from which a jury could have rationally reached its verdict." Id. (internal quotation marks omitted).

First, as noted, the District Court denied Washington's new trial motion because he failed to provide any support for his assertions that the verdict was against the weight of the evidence, that the trial record was "tainted," or that the "evidence was in conflict." The District Court did not abuse its discretion in denying the motion on this basis.[3] But even if the District Court had considered Washington's "Memorandum of Law" that was filed several days after his motion, that document, like Washington's brief here, only sets

---

[3] We note that, pursuant to the Magistrate Judge's procedures, "all motions must be accompanied by a brief," and the "supporting brief must be filed contemporaneously with the motion." See Chambers procedures for Magistrate Judge Maureen P. Kelly, http://www.pawd.uscourts.gov/sites/pawd/files/kelly_pp.pdf, at II.B. The requirement for a brief is waived if "the motion contains sufficient argument and legal citations to permit meaningful judicial review," but as noted, Washington's motion contained no supporting statements whatsoever.

forth minor inconsistencies that he found in the Defendants' testimony and exhibits.[4]  The

jury heard those same inconsistencies, and viewed those same exhibits, but it chose to

credit the Defendants' version of the events.  Washington did not, and has not,

demonstrated that the jury's verdict "cries out to be overturned or shocks [the]

conscience."  Klein v. Hollings, 992 F.2d 1285, 1290 (3d Cir. 1993).

Second, Washington claims that the jury verdict was tainted because the jury was

allowed to hear or see evidence regarding his conviction and his prior prison misconduct

history.  The record belies his assertion, as the jury did not see the exhibits that

Washington found troubling.  See Trial Transcript for December 3, 2015, Dkt. #100, pp.

3-4, 78, 186 (stating that the first three pages of J-19, which described Washington's

conviction and sentence, would not go out with the jury, and that J-4, which described

prior prison misconducts, had that information redacted before going out with the jury).

Finally, to the extent Washington attempts to raise new claims in his reply brief,

we decline to consider them.[5]  See Gambino v. Morris, 134 F.3d 156, 161 n.10 (3d Cir.

1998) (arguments raised for first time in reply brief will not be considered); see also

---

[4] For example, he argues that the original misconduct report concerning the move stated that he "hit into Doran," while another report said he "kept trying" to bump into officers, rather than saying that he actually *did* bump into the officers.  Br. at 14.  He also notes that McCloskey and Doran said in reports that he was trying to "escape" but that there was nowhere for him to go.  But both officers explained at trial that by "escape" they meant that Washington was attempting to escape their custody, and that it was prison policy to have an inmate in custody at all times when moving him.

[5] Moreover, to the extent Washington claims he was denied a fair trial because of the ineffectiveness of appointed counsel, "[a]n aggrieved party in a civil case, involving only private litigants unlike a defendant in a criminal case, does not have a constitutional right to the effective assistance of counsel."  Kushner v. Winterthur Swiss Ins. Co., 620 F.2d 404, 408 (3d Cir. 1980) (internal quotation marks omitted).

6

Ziccardi v. City of Philadelphia, 288 F.3d 57, 65 (3d Cir. 2002) (Court generally declines to address arguments not raised in the District Court).

For the foregoing reasons, the judgment of the District Court will be affirmed.