**Evelyn B. BURKE, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 05–3726.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 1, 2006.

Filed: March 2, 2007.

Evelyn B. Burke, York, PA, pro se.

Linda S. Wernery, Thankful T. Vanderstar, Janice K. Redfern, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: SLOVITER, MCKEE and AMBRO, Circuit Judges.

## OPINION

PER CURIAM.

Evelyn B. Burke petitions for review of an order of the Board of Immigration Appeals (BIA), affirming the decision of an Immigration Judge (IJ) that denied him relief under Article 3 of the United Nations Convention Against Torture (CAT).

Burke is a native and citizen of Jamaica. On January 9, 1979, an IJ found he was deportable for overstaying his visa, but granted him voluntary departure. Burke was arrested in August 1979 on a bribery charge. While in detention, he was recruited by an officer of the Immigration and Naturalization Service (INS), who sought and obtained Burke's cooperation with the INS to provide information regarding criminal activities of "several illegal Jamaican Rastafarians, and Jamaican political enforcers from the two major Jamaican political parties, drug-traffickers, and other gang-members sought by the police for various levels of criminal activities including *murder*." Informal Brief at 4 (emphasis in original). In exchange, the INS arranged for Burke's bond to be reduced from $10,000 to $5,000, and allowed him 30 days' voluntary departure, during which time his U.S. citizen wife filed an I–130 petition.

In the meantime, Burke committed several criminal offenses, including some controlled substance violations. On March 19, 2002, Burke filed a motion to reopen his immigration proceedings to assert a claim that he was eligible for deferral of removal under the United Nations Convention Against Torture (CAT). Burke claimed that he would be tortured if returned to Jamaica, because he had been a government informant in this country, and his cooperation had led to the arrest of Jamaican drug lords. Burke claimed that the remaining gang members in Jamaica would torture him upon his return. On May 30, 2002, the IJ vacated the earlier deportation order and granted the motion to reopen. At a hearing on July 11, 2002, Burke, through counsel, informed the IJ that he had an approved I–130 petition,

but the IJ noted that it did not appear that Burke was eligible to adjust his status, as he could not obtain a waiver of his controlled substance convictions. A.R. 199–200. On July 24, 2002, Burke was served with a new Notice to Appear, charging him with being removable on the basis of rape, petit larceny and criminal possession convictions. Additional charges of deportability were brought on August 27, 2002 for convictions for possession of crack cocaine and marijuana.

Following a hearing, the IJ noted that Burke was ineligible for asylum and statutory withholding of removal as he had committed crimes that fit the definition of particularly serious crimes. As for his claim for deferral of removal under the CAT, the IJ found that Burke had a genuine fear of being tortured upon his return to Jamaica. The IJ found that he feared retribution as a known informant for the U.S. government, which led to the deportation of Jamaican nationals involved in drug trafficking and violent crimes in the U.S., and that there may be individuals who would seek retribution against Burke. However, the IJ did not grant deferral of removal, finding that Burke could not show that the Jamaican government would either participate in or acquiesce to his torture. The IJ noted that over 20 years had passed since Burke had been an informant, and hoped that he could keep a low profile in Jamaica.

Burke timely appealed the IJ's decision. The BIA affirmed without opinion on June 18, 2003. Burke attempted to file a habeas petition to challenge the decision. Following a tortuous procedural path we need not set forth here, on August 4, 2005 this Court ordered that the habeas petition be docketed in this Court as a petition for review of the BIA's June 18, 2003 decision.

## I.

■ Before we reach the merits of Burke's claims, we must first address the scope of our jurisdiction. Under section 242(a)(2)(C) of the Immigration and Nationality Act (INA) [8 U.S.C. § 1252(a)(2)(C) ], we lack jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed," *inter alia*, a controlled substance violation covered in INA § 212(a)(2). However, the REAL ID Act of 2005 restored direct review of constitutional claims and questions of law presented in petitions for review of final removal orders. *See* INA § 242(a)(2)(D) [8 U.S.C. § 1252(a)(2)(D) ]; *Papageorgiou v. Gonzales*, 413 F.3d 356, 358 (3d Cir.2005). Because Burke has been convicted of controlled substance violations, we may consider only constitutional issues, pure questions of law, and issues of application of law to uncontested facts. *See Kamara v. Attorney General*, 420 F.3d 202, 211 (3d Cir.2005). "[F]actual or discretionary determinations continue to fall outside [our] jurisdiction." *Sukwanputra v. Gonzales*, 434 F.3d 627, 634 (3d Cir.2006).

## II.

Burke raises four issues in his brief: (1) the BIA "misconstrued or misapplied the law" in upholding the IJ's decision that Burke had failed to establish government complicity in conjunction with his CAT claim; (2) the BIA violated his substantive due process rights by failing to apply the state-created danger doctrine; (3) his due process rights were violated because he was denied the effective assistance of counsel in his immigration proceedings; and (4) the IJ erred in finding that he was ineligible for adjustment of status because his wife's I–130 petition had expired. We

agree with Burke that the IJ[1] used the wrong standard in denying his CAT claim, and will remand on that issue. First, we will briefly address the remaining issues.

■ Burke's argument that his substantive due process rights were violated by the BIA's failure to apply the state-created danger doctrine is a constitutional issue; we thus have jurisdiction to review the issue. However, Burke's argument is foreclosed by this Court's decision in *Kamara*, 420 F.3d at 216–18, in which we held that "the state-created danger exception has no place in our immigration jurisprudence." Although Burke argues that *Kamara* is wrongly decided, we are bound by this precedential decision, and we are without authority to reevaluate the decision absent intervening authority. Third Circuit I.O.P. 9.1.

■ Burke's third argument is that he was denied due process because he was denied the effective assistance of counsel in his immigration proceedings. The Government argues that we lack jurisdiction to review this claim, as there is no Sixth Amendment constitutional right to counsel in removal proceedings. However, we have noted that an alien does have a right to Due Process in a removal proceeding through the Fifth Amendment, and that where the alien can show that due to the ineffective assistance of counsel he was prevented from reasonably presenting his case, a violation may be found. *Ponce–*

*Leiva v. Ashcroft*, 331 F.3d 369, 374, 377 (3d Cir.2003).

As with any claim, we have jurisdiction to review the claim only if "the alien has exhausted all administrative remedies available to the alien as of right." INA § 242(d)(1) [8 U.S.C. § 1252(d)(1) ]; *see also Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir.2005). Here, it is unclear whether Burke intended to raise an ineffectiveness claim in his brief to the BIA. His brief does mention difficulties he had in communicating with his attorney concerning whether she had filed a brief, and his attorney's apparent failure to inform him of changes in his hearing dates. *See* A.R. 8–9, 29–30. However, his brief does not detail what, if any, steps he took to meet the procedural requirements for presenting an ineffectiveness claim to the BIA. *See Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988) (setting forth procedural requirements for raising ineffective counsel claims); *Lu v. Ashcroft*, 259 F.3d 127, 132–33 (3d Cir.2001) (approving *Lozada* requirements as reasonable exercise of BIA's discretion). Thus, the claim was not properly presented to the BIA and is unexhausted.[2]

■ Burke's fourth argument is that the IJ erred in finding him ineligible for adjustment of status because his I–130 had "expired." We need not reach the issue of whether an I–130 expires after a certain point, as we agree with the IJ that Burke

---

1. Because the BIA affirmed the decision of the IJ without opinion, we review the IJ's decision. *Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir.2005).

2. Even if Burke had met the procedural requirements of *Lozada*, he did not show how he was prejudiced by his attorney's alleged ineffectiveness. In his brief to the BIA, he complained that she had not filed a brief, but her untimely brief was later accepted by the BIA. He complained that the lack of communication with his attorney concerning hearing

dates caused him to lose witnesses that were prepared to testify on his behalf, but he did not state what those witnesses would have said, nor how their testimony would have changed the outcome. Indeed, not until his reply brief in this Court did he explain, in a vague manner, what the witnesses were prepared to say. We will "not consider arguments raised on appeal for the first time in a reply brief." *Gambino v. Morris*, 134 F.3d 156, 161 n. 10 (3d Cir.1998).

was in any event ineligible for adjustment of status because his controlled substance violations could not be waived pursuant to INA § 212(h) [8 U.S.C. § 1182(h)]. A.R. 199–200.

 We now turn to Burke's first claim: that the BIA "misconstrued or misapplied the law" in denying his CAT claim. The IJ found Burke's testimony regarding his CAT claim to be "essentially credible," and found that he had "a genuine fear of being tortured upon his return to Jamaica." A.R. 187. The IJ noted that Burke would need to show consent or acquiescence of a public official, and that "acquiescence" under the regulations and BIA precedent required that "a public official, prior to activity constituting torture, have awareness of such activity and breach his or her legal responsibility to intervene to prevent such activity." A.R. 187, *citing* 8 C.F.R. 208.18(a)(7) and *Matter of S–V–*, 22 I. & N. Dec. 1306 (BIA 2000). The IJ denied relief, at least in part, because Burke had not shown that the Jamaican government would be complicit in his torture; that "the government would either participate in his torture or acquiescence [sic] in his torture through one or more agents, officials or officers of the government acting in an official capacity." A.R. 188.

In *Silva–Rengifo v. Attorney General,* 473 F.3d 58, 70 (3d Cir.2007), we recently held that the definition of "acquiescence" adopted by the BIA in *Matter of S–V–* was the wrong legal standard to apply to CAT claims. Rather, we held that "acquiescence to torture requires only that government officials remain willfully blind to torturous conduct and breach their legal responsibility to prevent it." *Id.* As the IJ applied the wrong standard in deciding Burke's claim, we remand to give the BIA the first opportunity to apply the correct standard. *INS v. Ventura,* 537 U.S. 12,

16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam).

For the foregoing reasons, we will deny the petition in part, grant the petition in part, and remand for further proceedings.